[Civ. No. 24612.   Second Dist., Div. Three.   Mar. 13, 1961.]

PHYLLIS C. AUSTIN, Respondent, v. JEROME RALPH AUSTIN, Appellant.

A. Patrick Nagel for Appellant.

Howser, Coughlin & Schmitt, W. J. Schmitt and Charles Hollopeter for Respondent.

SHINN, P. J.—Phyllis C. Austin brought suit against Jerome Ralph Austin for divorce alleging extreme cruelty. Defendant answered and also filed a cross-complaint by which he sought annulment of his marriage to plaintiff upon the ground that at the time the same was entered into he was still the husband of a former wife, his second, notwithstanding a decree rendered in Mexico which purported to award him a divorce from his then wife. The complaint of plaintiff described property of the parties, which was alleged to be community property, which plaintiff sought to have divided in an equitable manner. By his answer defendant denied the allegations of the ownership of community property, although his answer stated "defendant admits that plaintiff and defendant have acquired certain property, by their joint efforts, while living together as man and wife."

Findings were generally in favor of plaintiff upon her complaint and against defendant upon his answer and cross-complaint. Judgment was entered awarding plaintiff a divorce, the custody of three minor children, support money,

determining all the property of the parties except the family home to be community property and making a division of the same. Defendant has appealed only from the part of the judgment respecting the ownership and the division of community property.

Admittedly the property consisted of a family residence in Arcadia, household furniture and furnishings, 298 shares of the capital stock of J. R. Austin Company, a corporation, and defendant's interest in the company, insurance policies, stocks, bonds, bank accounts and savings accounts. Defendant contends that it was established without conflict in the evidence that all said property was his separate property with the exception of the home of the parties which was in joint tenancy. The court found that the home property was owned in joint tenancy, and that finding is not questioned.

The parties intermarried at Stockton, California, March 1, 1945. At that time both were in the employ of a shipyard company, plaintiff as a clerical worker, defendant as a superintendent. They continued their employment for eight months following their marriage and combined their earnings in an amount that was not disclosed by the evidence. Plaintiff had savings bonds of the value of about $200. Defendant had assets which he stated to plaintiff to be worth $8,000 and which he testified were of the value of about $11,000. In November 1945, defendant purchased a half interest in a partnership in a welding business in Pasadena for an amount which he stated at the time was $1,800 but which he testified was $2,700. The funds which the parties had accumulated after their marriage and placed in a bank in Stockton were transferred to a bank in Burbank, and from this account defendant withdrew the amount paid for the interest in the business. Both parties devoted their attention and efforts to the operation of the business for about nine months, until plaintiff gave birth to her first child. After about a year defendant's partner, Ava Beard, sold his interest to one Lugenbeil and in the following year defendant's father acquired Lugenbeil's interest. The business was incorporated in 1948; defendant owns 298 shares of the capital stock; his father owns 123 shares but was not shown to have been active in the business.

Plaintiff had recorded a homestead on the residential property. In the division of the property she was awarded the furniture and the homestead was assigned to her until a sale or partition of the same, and defendant was ordered to pay the taxes and certain insurance premiums, one-half of which

would be credited to him upon the sale of the property. Defendant was awarded the 298 shares of corporate stock, a promissory note and chattel mortgage he held, a certain traveling crane he had purchased, real property in San Diego and all moneys, stocks and other assets in a brokerage account with William R. Staats and Company. Plaintiff was awarded custody of the children and defendant was ordered to pay $100 per month for the support of each child and $150 per month for the support of plaintiff. Defendant was further ordered to pay plaintiff the sum of $50,000 as the value of her one-half interest in the 298 shares of stock, to be paid at the rate of $350 per month.

Defendant contends that the sum paid for the interest in the business, whether $1,800 or $2,700, came from his separate funds on deposit in the Burbank bank, and that not only the stock which represents the appreciated value of the business but the property acquired from earnings are his separate property.

Plaintiff contends that the findings as to the community character of the property are sustainable upon alternate theories: 1, the funds with which the business was purchased consisted in part of defendant's separate funds which were commingled with community funds and for that reason were properly held to be property of the community; 2, even if the interest in the business were purchased with defendant's separate funds, the court could properly have compensated him for the same by allowing him the value of the use of his money, and plaintiff says that presumably the court intended to thus compensate him by awarding him property of the value of at least $17,000 in excess of a one-half interest in the community property; and 3, the growth of the business and its present value were due entirely to the personal services of defendant, consisting of labor, skill and management of the business, as a result of which the stock in the company constitutes community property.

We are of the opinion that the findings with respect to the community property have substantial support in the evidence and that the division of the same was fair and just.

It was incumbent upon defendant to produce proof which would convince the trial court that the business was purchased entirely with his separate funds. (*Estate of Duncan,* 9 Cal.2d 207 [70 P.2d 174]; *Estate of Fellows,* 106 Cal. App. 681 [289 P. 887].) Although he testified that the money came from his account in Burbank which he main-

tained prior to the marriage, he produced no records respecting the same, nor any evidence as to the amount of the combined earnings of the parties which were transferred to his own account. These could well have amounted to all or a substantial part of the sum paid for the business. The parties had discussed the purchase of the business; there was no agreement that it would be purchased with defendant's funds or that he would own it as his separate property. Inasmuch as the property was acquired after marriage and was presumably community property (Civ. Code, §§ 163, 164), we cannot hold as a matter of law that it was proved beyond question that the business was acquired with the separate funds of defendant. ■ Where separate and community funds were commingled, as they were here, in a single bank account, in undisclosed amounts, the court would have been warranted in concluding that the entire amount constituted community property. (10 Cal.Jur.2d 702.)

■ Where a husband has used his separate funds as capital of his separately owned business and has also rendered services in the business, the court can, upon proper evidence, segregate the value of the services and the value of the use of capital; as stated in *Huber* v. *Huber,* 27 Cal.2d 784, 792 [167 P.2d 708] : ''In regard to earnings, the rule is that where the husband is operating a business which is his separate property, income from such business is allocated to community or separate property in accordance with the extent to which it is allocable to the husband's efforts or his capital investment.'' In *Huber,* it was necessary in the operation of the business for the husband to make use of $15,000 or $20,000 of his separate funds in making advancements to customers as a regular part of the business.

Defendant cites the case of *Van Camp* v. *Van Camp,* 53 Cal. App. 17 [199 P. 885], and says the facts of that case ''are identical with the facts of the instant case.'' In *Van Camp,* the husband's interest in the business, which he owned prior to the marriage amounted to as much as $150,000 of total capital of $200,000. Although he devoted much time to the business his services were only such as could have been performed by any other person of equal ability. It was held that the husband's share of the earnings of the business, in excess of the salary he had received, were not property of the community. Defendant also relies upon *Gilmore* v. *Gilmore,* 45 Cal.2d 142 [287 P.2d 769], a case in which the husband's business increased in value after the marriage from $182,000 to $780,000.

The wife claimed the amount of the increase as community property. The trial court rejected her claim and the judgment was affirmed. With respect to the contributions attributed to the husband's use of capital and the services he performed for the several corporations the court remarked: "Defendant's corporations were staffed by well trained personnel who were capable of carrying on the business unassisted. Defendant worked relatively short hours and took many extended vacations. There was expert testimony that the salaries he received, which were found to constitute community income, were more than ample compensation for the services he rendered." (P. 150.)

In the foregoing cases, and others which follow the same rules, the businesses which belonged to the several husbands at the time of marriage were going concerns which could not have existed or functioned without the use of the husbands' capital.

Plaintiff cites the case of *Pereira* v. *Pereira,* 156 Cal. 1 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A. N.S. 880], as the leading California case announcing the doctrine that where the separate property of a husband is invested and used in his business and without which the business could not have been carried on, he should be allowed in a division of the community property, at least interest upon the money as upon a long-term secured investment. Although plaintiff contends that defendant was awarded more than one-half the value of the community property and that the court presumably intended thereby to compensate him for the use of his money in the business, we cannot agree that this theory is reflected in the findings and judgment. The facts in *Pereira* which were held to justify an allowance to the husband for the use of his money were that although the principal part of the large income was due to the personal character, energy, ability and capacity of the husband, which earnings were community property, the business could not have been carried on without the use of the husband's capital. This factual situation is far removed from the one we are considering. ▮▮▮ It is clear to us that the finding of the community character of the stock was the only logical conclusion to be reached from the fact that the welding business ever since it became successful has been essentially a one-man business, and that the equipment of the shop which defendant purchased, while essential to the operation of the business, did not in any real sense constitute a contribution to capital.

In the present case the welding business had no operating capital whatever except through earnings. In the beginning the business was only bringing in $7 or $8 a day, and it had no value whatever except in the equipment of a welding shop. This was all defendant purchased. Even his partner soon disposed of his interest, as did the incoming partner who bought it. Defendant worked long hours, from 7 a. m. until late in the evening, estimating for prospective jobs and managing and supervising the work. All the earnings of the business were due to his labor, skill and management. There was no one else to take his place. It is true that he was on a salary of $1,000 per month, and that in recent years he had withdrawn from the business about $27,000 per year, but it would be unrealistic to say that this was the full measure of the value of his services, and that the increase in value, or any part of it, was due to capital supplied by defendant and used in the business. The increased value of the business earned by the efforts of defendant was as clearly community property as were the sums which he had withdrawn from the business. If the value of his entire services were withdrawn from the value of the business there would be nothing left as separate property attributable to the use of capital as a contribution to the earnings and the value of the business. The situation was much the same as that of a professional man who invests in equipment of an office and library, or of an artisan who acquires the tools of his trade. As the business is developed the value it takes on is not due to the equipment itself aside from the labor, judgment and skill with which it is used. It must be presumed that the trial court concluded that the value which it placed upon the business of $100,000 was due to the personal services of defendant, and to nothing else. It is a conclusion with which we agree, and it supports the further conclusion that the stock representing defendant's interest in the business was community property. This is the only question presented on the appeal.

The judgment is affirmed.

Vallée, J., and Ford, J., concurred.