UNITED STATES of America, Plaintiff–Appellant,

v.

Nancy A. ELAM, Defendant–Appellee.

No. 95–56073.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1996.

Decided May 2, 1997.

Annette M. Wietecha, Tax Division, United States Department of Justice, Washington, DC, for plaintiff-appellant.

Donald Lavi, Agoura Hills, CA, for defendant-appellee.

Before: GOODWIN, WIGGINS, and JOHN T. NOONAN, Circuit Judges.

WIGGINS, Circuit Judge:

The Government appeals from a judgment in favor of a taxpayer. Nancy Elam claimed a refund on her 1989 separate tax return, based on half of the overpayment credit she and her ex-husband had from their 1988 joint return. The district court ruled on summary judgment that the Government could not use the couple's prenuptial agreement to show that the overpayment arose from her husband's separate property because the agreement could not bind the Government. Thus, the court found that the Government failed to rebut California's presumption that the overpayment was community property in which the taxpayer had a one-half interest. We have jurisdiction for the appeal under 28 U.S.C. § 1291. We REVERSE and REMAND for trial.

## Background

The day before their marriage, Nancy and Dr. Michael Elam signed a prenuptial agreement. The agreement provided that all income from Dr. Elam's personal services would be his separate property "as though the [ ] marriage had never been entered into" and also that all property he owned before the marriage (and any property into which it was converted) would remain his separate property.

The Elams filed a joint tax return for 1988 as a married couple. They claimed an overpayment of $176,988. The couple requested the overpayment be applied to their 1989 tax payment. During 1989, the couple separated, with the divorce becoming final on February 4, 1990. Following the couple's separation, Dr. Elam filed a separate tax return for 1989, claiming the entire $176,988 credit carried over from 1988. He eventually received credit for this amount.

In 1991, Nancy filed a delinquent 1989 tax return, claiming a credit for half the overpayment from the 1988 joint return ($88,494). As a result, she ultimately received a refund for $71,537, after offsetting her tax liability for 1989 and correcting for a $1500 miscalculation.

The Government sought to recover the $71,537 refund in district court, claiming the 1988 overpayment was Dr. Elam's separate property to which Nancy was not entitled. The district court granted summary judgment in favor of Nancy. The district court ruled that the Government had failed to show the overpayment was Dr. Elam's separate property because the couple's prenuptial agreement was irrelevant as a matter of law to the property status of the overpayment. The court reasoned that the prenuptial agreement was irrelevant because it was not binding on the Government. Thus, the court held that the Government failed to rebut California's community property presumption which entitled each spouse to claim half the overpayment credit. The Government appeals.

## Discussion

We review *de novo* the district court's summary judgment based on its conclusion

that the prenuptial agreement was not relevant as a matter of law. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994).

The Internal Revenue Code states that overpayment in one year may be credited against any tax liability "on the part of the person who made the overpayment. . . ." 26 U.S.C. § 6402(a). Simply put, the person who overpaid is entitled to claim the overpayment credit. This case turns on whether the Government may rely on the Elams' prenuptial agreement to determine that the 1988 overpayment arose from Dr. Elam's separate property and not from the couple's community property. Nancy is not entitled to the overpayment if the Government can rely on the prenuptial agreement to show that the 1988 overpayment was generated by Dr. Elam's separate property.

■ A joint return does not itself create equal property interests for each party in a refund. Spouses who file a joint return have *separate* interests in any overpayment, the interest of each depending upon his or her relative contribution to the overpaid tax. *Gordon v. United States*, 757 F.2d 1157, 1160 (11th Cir.1985) (finding the bulk of tax withholding claimed on a joint return was from husband, so bulk of refund should be apportioned to husband); *Rosen v. United States*, 397 F.Supp. 342, 343 (E.D.Pa.1975); Rev.Rul. 74–611, 1974–2 C.B. 399 ("Thus, a joint income tax return does not create new property interests for the husband or the wife in each other's income tax overpayment."); *see also Conklin v. Commissioner*, 897 F.2d 1027, 1031 (10th Cir.1990) (citing Rev.Rul. 74–611, 1974–2 C.B. 399). Thus, the Elams' decision to file a joint tax return in 1988 does not change the underlying property interests at stake.

Because the couple's actual property interests are determinative even where a joint return is filed, we turn to analyzing those interests.[1]

■ All property acquired during marriage in California is presumptively community property. Cal.Fam.Code § 760. Further, property inextricably commingled with community property becomes community property. *Austin v. Austin*, 190 Cal.App.2d 45, 11 Cal.Rptr. 593, 595 (1961). If the Government fails to rebut the presumption the Elams' property is community property, then the district court is correct that each spouse is entitled to claim one-half of the 1988 overpayment credit.

California permits agreements between the spouses, including prenuptial agreements, to transmute community property into separate property. Cal.Fam.Code § 850(a). In their prenuptial agreement, the couple agreed that Dr. Elam's earnings and other property were his separate property. The Government contends that the prenuptial agreement is therefore relevant to rebut the community-property presumption because it shows the overpayment was Dr. Elam's separate property.

■ Transmutation agreements that are valid under state law are also binding on the Government for federal tax purposes. *Helvering v. Hickman*, 70 F.2d 985, 987 (9th Cir.1934) (finding wife's income was not taxable on the husband because transmutation agreement kept her earnings as separate property); *see also United States v. Brodie*, 858 F.2d 492, 499 (9th Cir.1988) ("To be effective for federal tax purposes, the transmutation agreement must be valid under state law.").

The district court should not have relied on *Hathaway v. United States*, 93–1 U.S.T.C. ¶ 50,285, 1993 WL 207532 (W.D.Wash.1993), to establish that each spouse is entitled to fifty percent credit for the overpayment claimed on a previous joint tax return. The *Hathaway* court explicitly recognized the general rule that overpayment by married couples should be apportioned to each spouse to the extent each contributed to the over-

---

1. Inquiring into the proper allocation of the overpayment is not inconsistent with *Janus v. United States*, 557 F.2d 1268 (9th Cir.1977). In that case, we held that a taxpayer who filed a *separate* return must be credited with overpayments made on a separate declaration of estimated tax, without inquiry into the source of the funds used to make the overpayment. *Id.* at 1269–70. An inquiry into the source of the overpayments is necessary when a *joint* return is filed, however, because a joint return, by its nature, implicates two people's interests, not one.

payment. *Id.* at 88,091. The court apportioned half of an overpayment credit to each spouse only because it could not determine the portion of the overpayment credit attributable to each spouse despite a thorough examination of the joint return. *Id.* The court then relied on Washington's *presumption* that income earned during marriage is community property, as are funds inextricably commingled with community property. *Id.* at 88,092.

In this case, in contrast, the Government offered evidence to rebut California's presumption that the overpayment was community property: the prenuptial agreement. *Hathaway* is relevant only if it is impossible to apportion the Elams' separate property interests in the overpayment. To the extent the Government can rely on the prenuptial agreement to establish those interests, the facts of this case are distinguishable from *Hathaway* because the Government can rebut the presumption of community property.

*United States v. Mooney,* 400 F.Supp. 98 (N.D.Tex.1975), is also inapplicable because the agreement in that case was a *later* agreement relating to division of marital property and purportedly governing ownership of a refund claim. The divorce agreement would have changed the relative shares in an overpayment after the overpayment was made. *Mooney* does not apply to an agreement governing whose property generated the tax. Unlike *Mooney,* Taxpayer's prenuptial agreement with Dr. Elam (if valid) controlled the property interests in the taxable income for 1988, and thus who overpaid the 1988 tax and was entitled to the overpayment credit in 1989. The lesson of *Mooney* is that determining what earnings are taxable to whom—and whether, if there is overwithholding on those earnings, to whom the overwithholding is to be credited—should be done with reference to the facts as they were in the tax year at issue. The Elams' agreement, unlike that in *Mooney,* already was in effect during the year of the overpayment. Moreover, to disallow any reliance on a prenuptial agreement in a community property state would create an *irrebuttable* presumption that all income is from community property, which is inconsistent with California law.

■■■ Accordingly, we conclude that a valid prenuptial agreement is relevant to determine the proper apportionment to each spouse of the overpayment claimed on the couple's 1988 joint return. To the extent the Government can show the overpayment resulted from Dr. Elam's separate property because of the prenuptial agreement, Nancy Elam is not entitled to a refund on her 1989 separate return based on the overpayment credit. Accordingly, the Government should have the opportunity to show the proper apportionment of the 1988 overpayment credit by relying on the prenuptial agreement.[2] Taxpayer should have the opportunity to show the prenuptial agreement is invalid.

## CONCLUSION

We REVERSE the judgment and REMAND for further proceedings consistent with this opinion.

---

2. The Government admits it did not offer evidence to establish what portion of the overpayment was attributable to what the prenuptial agreement defines as Dr. Elam's separate earnings. The Government contends, however, that Nancy had agreed that Dr. Elam was entitled to the entire credit if the prenuptial agreement were valid. It notes that the parties had stipulated before the summary judgment that if the prenuptial agreement were valid to show property interests, then "the government wins and the court can enter judgment against the taxpayer."

Because the District Court later determined the prenuptial agreement was irrelevant to the apportionment of the overpayment, the stipulation did not apply. Nonetheless, because we find the agreement was valid, Nancy is again bound by her earlier implicit acknowledgment that she did not contribute to the overpayment from her separate property.