**In re L. Andrew BERNHEIM, Debtor.**

**Adelyn FIRTEL, Plaintiff,**

**v.**

**L. Andrew BERNHEIM and Santo J. Lalomia, Trustee For L. Andrew Bernheim, Defendants.**

Bankruptcy No. 82–06931.
Adv. No. 85–0350TG.

United States Bankruptcy Court, D. New Jersey.

Feb. 13, 1986.

Shashaty & Lalomia, Paterson, N.J., by Frances Gambardella, Glen Ridge, N.J., for Santo Lalomia, Trustee.

Lowenstein, Sandler, Brochin, Kohl, Fisher, Boylan & Meanor, Roseland, N.J., by David Zabel, Roseland, N.J., for debtor.

Podvey, Sachs & Catenacci by Herbert Waldman, Newark, N.J., for Adelyn Firtel.

Rabner & Allcorn by Harold Rabner, Upper Montclair, N.J., for Antony Bernheim.

Johnson & Johnson by George Johnson, Dover, N.J., for Dawn Bernheim.

Rothbard, Rothbard & Kohn by Jonathan Kohn, Newark, N.J., for trustee Jonathan Kohn—Elm Court.

Kalb, Friedman & Siegelbaum by Joel Glucksman, Roseland, N.J., for trustee Jack Birnberg—Reach—McClinton.

Goldstein & Till by Peter Till, Newark, N.J., for Lib Realty.

Sills, Beck, Cummis, Zuckerman, Radin, Tischman & Epstein, Robert Baime, Newark, N.J., guardian ad litem for L. Andrew Bernheim.

## OPINION

WILLIAM H. GINDIN, Bankruptcy Judge.

The above matter comes before the Court on the complaint of Adelyn Firtel seeking to compel the Debtor, L. Andrew Bernheim, to turn over to the Trustee, Santo Lalomia, certain monies received by him since the commencement of the original case (*In the Matter of L. Andrew Bernheim*, Debtor, Docket No. 82–06931). Various submissions were made by way of Affidavit and portions of the depositions of Milford Inganamort and Raymond Uzzi. The parties agreed that same should be considered by the Court. The testimony of the Debtor was taken on January 17, 1986 and final submissions were received by the Court on February 4, 1986.

The Debtor filed the original Petition on October 6, 1982. In the Schedule of Assets filed in conjunction therewith, the Debtor listed ownership in Lib Realty, Inc. (hereinafter referred to as Lib) which in turn owned various interests in real estate. No listing of said interests was given. During 1985 the Debtor received certain monies from Lib in connection with two transactions. The first transaction was a transfer from Mountainview Manor Limited Partnership to VFW Equity Group, LTD. (hereinafter referred to as Mountainview). The second transaction arose from the transfer of property by Stonehurst Associates (hereinafter referred to as Stonehurst).

The essential dispute arises from the claim of the Debtor that all sums received constitute post-petition earnings of the Debtor which are excepted from the definition of an estate contained in § 541 of the Bankruptcy Code, (11 U.S.C. § 541(a)(6)), in that they are "earnings from services performed by an individual debtor after the commencement of the case". The Trustee, as well as the Plaintiff in the within action, and the other parties in interest urge that such funds as received by the Debtor do not constitute "earnings", and as such are a portion of the estate available to creditors for distribution. They further urge that even if such funds are deemed earnings, they are subject to the jurisdiction of the Court.

## MOUNTAINVIEW

At the present time Robert Baime, Esq., Special Guardian Ad Litem for the Debtor L. Andrew Bernheim, is holding approximately $62,500 in funds remaining from a "commission" paid with respect to the Mountainview transaction. All parties agree that in August of 1985 Lib received the sum of $575,000 as a commission for the Mountainview transaction. The Debtor had listed a portion of his interest in Lib as being available to fund $600,000 toward a proposed plan. (Second amended disclosure statement of Debtor L. Andrew Bernheim, pg 4, para. b, # 9) In making distribution the other principles of Lib Realty (L. Andrew Bernheim being a one-third shareholder) acknowledged the receipt of the money. From the $575,000 they deducted certain costs of sale which the company had incurred and then, in accordance with an agreement dated February 25, 1985 (and denominated P1 in evidence at the hearing on January 17th) earmarked one-half of the remaining sum to the Debtor. A pre-existing advance was repaid directly by Lib on behalf of Mr. Bernheim and the balance of $201,000 distributed to Mr. Bernheim. Mr. Bernheim immediately spent $70,000, leaving $135,000 remaining. Pursuant to an order of the Superior Court of New Jersey, Chancery Division, Matrimonial Part, Mr. Bernheim's former wife, Dawn Bernheim, seized the balance of $135,000 in furtherance of the Court Order previously entered. Since that time this Court has released the sum of $62,500 to Dawn Bernheim for the purpose of acquiring real estate in furtherance of the divorce proceeding. The balance was transferred to Mr. Baime, who holds it subject to the direction of this Court.

The facts adduced make it unquestionable that the funds attributable to the Mountainview transaction were in fact real estate commissions. Mr. Bernheim testified that he received the funds as compensation at the sale which occurred in August of 1985 because, among other things, he ar-

ranged financing, drafted a contract and met with the company which ultimately arranged a syndication (Tr. January 18, 1986, pg. 18). The nature of those payments was confirmed by testimony from the other two principals of Lib. Milford Inganamort, one of the other principals, testified at a deposition on September 12, 1985 "Andy received money from Lib Realty in consideration of his efforts for the commission that Lib Realty received" (Tr. September 12, 1985, Pg. 35). On the same date the other principal and one-third shareholder of Lib, Raymond Uzzi, testified "For services rendered on producing an eventual real estate commission or an eventual sale of a piece of real estate" (Tr. 9/12/85 Pg. 184). The Plaintiff urges that these payments with respect to Mountainview do not constitute "earnings" and presents as her main theory the argument that the receipt of real estate commissions by the Debtor is illegal. The debtor is neither a real estate broker nor a real estate salesman (Tr. January 17, 1986, pg. 34, 1. 22, pg. 35, 1.13).

In *Baron & Co., Inc. v. Bank of N.J.*, 504 F.Supp. 1199 (D.N.J.1981) which described activities of a Plaintiff similar to those in the instant case, Judge Gerry determined that the Plaintiff would not be permitted to maintain an action to seek reimbursement for such commissions. The policy of the law was held to be "so strong that neither a contract nor the unlawful efforts made in its pursuit could provide the basis of pecuniary benefit to such a broker", 504 F.Supp. 1209. The statute, *N.J.S.A.* 45:15–1 *et seq.* specifically precludes such activities as the ones set forth by Mr. Bernheim. *See N.J.S.A.* 45:15–3. In *Weston Funding Corporation v. The Lafayette Towers, Inc.*, 550 F2d 710 (2d Cir.1977), Judge Timbers of the Second Circuit refused to permit an action in New York after a New Jersey Court had prohibited the action in New Jersey because of the failure of the Plaintiff to be licensed in New Jersey. The inference which can be drawn from the *Weston* case is that the New Jersey statute being a "door closing" statute prohibits any action for the enforce-

ment of the right to a commission in any Court.

Defendant argues that the within action is not one for the enforcement of a commission. He cites a number of cases in support of the fact that "earnings" cannot be considered a part of the Debtor's estate, but is in fact exempt under 11 U.S.C. § 541(a)(6). *See In Re Fitzsimmons*, 20 B.R. 237 (9th Cir. BAP 1982) *aff'd* 725 F.2d 1208 (9th Cir.1984), and *In Re Lotta Water Land Co.*, 25 B.R. 32 (Bkrtcy ND Texas 1982). A contrary result arose in *In Re Sloane*, 32 B.R. 607 (Bkrtcy E.D.N.Y.1983), but in that case a finder's fee was paid for work which in fact had been done prior to the filing of the petition and the case is thus not apposite. The *Lotta Water Land Co.* case is instructive in that a careful distinction was drawn between pre and post-petition transactions.

■ The determination in the instant case, however, cannot rest solely on the issue of whether or not the collection of the monies from Mountainview is illegal. The distinction which must be drawn is one between the exception found in 541(a)(6) and 541(a)(7) which latter section governs property acquired by the estate after the commencement of the case. In the instant case, commissions were paid to Lib and the issue of whether or not Lib was entitled to collect them by virtue of its position in the real estate business is not before the Court. The question is whether or not there are earnings from services performed by the Debtor. The services were in fact performed by Lib and whatever distribution Lib made in fact constituted "profits" on property (i.e. the stock of Lib) acquired before the commencement of the case. The receipt of $575,000 by Lib was earnings of Lib and resulted in a greater profit. The Debtor did not receive regular wages (and was not on the payroll of Lib) (Tr. January 17, 1986, Page 40, line 13 to line 19) and did not receive a fixed amount. If the amount paid was wrong, the New Jersey statutes prohibit an action by the Debtor on the basis that he earned a real estate commission. Thus, the characterization

can only be some distribution of profits from a company which increased in value over the course of the Chapter 11 proceeding.*

Thus, Mountainview money is not earnings, but in fact pursuant to the provisions of 11 U.S.C. § 541(a)(6) is profits which constitute a portion of the estate.

STONEHURST

In addition to the money received as a result of the Mountainview transaction, Lib indicated that it has available $196,000 which it had released to the Debtor. At the direction of the Court the sum is being held by Peter W. Till, Esq., attorney for Lib. This money is claimed by the Debtor to be post-petition earnings, but no evidence was presented to indicate that it bore any relationship to services performed entitling him to receive compensation. In fact, the testimony is clear that the $196,000 represents two different sources. The testimony of Milford Inganamort and Raymond Uzzi agrees and indicates that the final transaction concerning Stonehurst is not yet complete. (Tr. December 23, 1985, pg. 49, line 19 through page 50 line 15, page 102, line 16 through 23.)

Initially, each of the three owners of Lib received cash distributions on an equal basis. (Tr. December 23, 1985, pg. 98, line 10 through line 14, page 26, line 11 to line 17). The details of the Stonehurst transaction are outlined by Messrs. Uzzi and Inganamort and indicate a commission has not yet been paid because the current transactions are still internal. Furthermore the testimony (Tr. January 17, 1986, p. 27, 1. 23, p. 29, 1.16) indicates that the amounts have not yet been determined. The money constituting the $96,000 distribution was, in fact, "an accumulation of cash in Lib Realty". While there is conflict between that testimony and Mr. Bernheim's testimony (Tr. January 17, 1986, p. 40, 1.7 to 1.12) the affirmative, truly uncontradicted testimony

concerning the particular distribution must be accepted as true.

■ Thus, the $96,000 amount included in the money being held by Mr. Till is a bonus based upon the financial condition of Lib and, in fact, constitutes a dividend. 11 U.S.C. § 541(a)(6) encompasses profits from property of the estate. Since the Debtor's interest in Lib was property of the estate and the $96,000 was a bonus or dividend which arose solely from his position as a stockholder. The Debtor argues that it comes as a result of his ownership interest in Stonehurst Associates, but no evidence has been presented that the Debtor owns any portion of Stonehurst Associates independent of his ownership of Lib. Since Lib was in fact an asset at the time of the filing of the petition, whatever acquisitions of property were made by Lib fall into the category of profits or proceeds as contemplated by the statute.

It is important to note that § 541 is an outgrowth of § 70a of the Bankruptcy Act which set forth in detail what was included. Even under § 70a however the bankrupt would have had title to an interest in Lib, and whatever rights the Debtor had in the property in dispute here all of them arose out of his position with respect to Lib.

The Court, therefore, finds that the sum of $96,000 is, in fact, a distribution to the Debtor for his ownership interest in Lib and is property of the estate.

Mr. Till is directed to turn over that sum to the Trustee for L. Andrew Bernheim forthwith.

The remaining $100,000 is also the subject of a difference of opinion. The Debtor claims that it is a portion of commission paid. As pointed out above, no evidence was presented to show that any commission was either due or paid. The explanation offered by Mr. Inganamort (Tr. De-

---

* The Plaintiff urges even if the Court finds that the money set forth herein is earnings, the Court should extend the meaning of § 1306 (11 U.S.C. 1306) to include post-petition earnings in the administration of Chapter 11 estate. Such a determination would be contrary to the plain meaning of the statute as well as the holding in *In Re Fitzsimmons, supra.* It would be inappropriate to adopt the reasoning of the dissent of the bankruptcy appeals panel in that case in light of the affirmance of the majority by the 9th Circuit.

cember 23, 1985, p. 29, 1.5 through P.30, 1.15) shows that Lib had borrowed a certain amount of money, the return of which was not yet due. Messrs. Inganamort and Uzzi felt that by reloaning these funds to the individuals they could make more money than the cost to the corporation and as a result offered each of the three principals an opportunity to borrow $100,000. It was this $100,000 which was forwarded to Mr. Till representing that amount available to Mr. Bernheim. These monies are due back on call of the corporation (Tr. December 23, 1985, P.30, 1.24 to p.31, 1.5.).

■ A Debtor in a Chapter 11 proceeding is permitted to incur unsecured debt in the ordinary course of business 11 U.S.C. § 364(a) but may not obtain unsecured credit without application to the Court, 11 U.S.C. § 364(b). Thus, the Debtor in this case is not permitted to borrow and the money cannot be forwarded to him. As a result of the foregoing, the $100,000 in the hands of Mr. Till representing the loan is held for the benefit of Lib and should be returned to Lib or disbursed in accordance with its instructions. It is the determination of this Court that the Debtor has no interest therein.

■ In dealing with the foregoing problems it is important to note that § 541(a)(6) is a general section with a very narrow limitation. Proceeds are directed to be defined in broad fashion. *In re Clark*, 711 F.2d 21 (3rd Cir.1983) wherein an income on a prior investment in an IRA is included in proceeds. Colliers indicates that the term "proceeds" "is intended to be a broad term which will encompass all proceeds of estate property". 4 Collier on Bankruptcy 541–94 para. 541.19 (15th Edition, 1985) The exception for earnings is carefully denominated and limited in its extension. *See In re Haynes*, 679 F.2d 718 (7th Cir.1982) *cert. den.* sub. nom.; *Miller v. Haynes*, 459 U.S. 970, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982); *In re Ryerson*, 30 B.R. 541 (9th Cir. BAP 1983)

## CONCLUSION

Based upon the foregoing, all sums held by Mr. Baime together with the $96,000 capital distribution now held by Mr. Till are pre-petition property of the estate and shall be turned over to Santo Lalomia, Trustee. The balance of $100,000, being the property of Lib, is released to Lib. The debtor, having made no application, may not borrow same.

Attorney for the Plaintiff is directed to submit an Order in accordance with this Opinion, pursuant to Local Rule 3(c).