**In re WDH HOWELL, LLC, FEL, Corp. and William D. Hurley.**

**Nos. 01–50618, 01–56422, 01–56423.**

United States Bankruptcy Court, D. New Jersey.

June 24, 2003.

Scott D. Sherman, Esq., Minion & Sherman, West Caldwell, NJ, for Valerae Hurley.

Richard Meth, Esq., Pitney, Hardin, Kipp & Szuch, LLP, Morristown, NJ, for Criimi Mae.

## *OPINION*

WILLIAM H. GINDIN, Bankruptcy Judge.

Presently before the court is a motion for turnover of property filed by Valerae Hurley, the spouse of the debtor, Dr. William D. Hurley. Dr. and Mrs. Hurley received tax refunds from the IRS for tax years 1999 and 2000 in the amount of $78,608.70 and $167,999.00, respectively. Mrs. Hurley, a non-debtor, seeks payment of one half of the tax refunds, $123,303.85. Dr. Hurley filed a voluntary Chapter 11 petition on May 24, 2001. As discussed below and in accordance with New Jersey law and the precedent of the majority of courts deciding this issue, the court holds that the tax refunds are solely the property of the bankruptcy estate and Mrs. Hurley's motion for turnover is denied.

## *JURISDICTION*

The bankruptcy court has jurisdiction in this matter pursuant to 28 U.S.C. § 157(b)(2)(E) and (O), and the Standing Order of the District Court for the District of New Jersey dated July 23, 1984. The motion before the court concerns a request for turnover of estate property. At issue are two federal tax refund checks for tax years 1999 and 2000. The debtor filed his chapter 11 petition on May 24, 2001. As discussed in greater detail below, although the IRS issued the checks after the filing of the petition, on November 16, 2001 and

March 29, 2002, the refunds stem from the debtor's pre-petition wages and overpayments and are therefore property of the estate over which the bankruptcy court maintains jurisdiction. Additionally, venue lies properly within this district pursuant to 28 U.S.C. § 1408.

### FACTS

In this matter, the movant, Valerae Hurley ["Mrs. Hurley"] seeks an order for turnover of one half of the proceeds from two tax refund checks issued to her and her husband by the Department of the United States Treasury. The court conducted a hearing on Mrs. Hurley's motion and Criimi Mae's opposition thereto on December 11, 2002. Both parties timely filed post-hearing submissions with the court. The Office of the United States Trustee was not present and took no position.[1]

Dr. William D. Hurley, the debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code on May 24, 2001. Dr. Hurley was the principal of two entities; 1.) FEL, Corp., which manufactured specialized defense products and 2.) WDH Howell, LLC, the owner of non residential real property. WDH Howell filed a voluntary Chapter 11 petition on January 18, 2001 and FEL Corp., filed a voluntary Chapter 11 petition on May 24, 2001. The three cases are being administered jointly.

Criimi Mae, the objector to the Motion for Turnover, is the Special Servicer of a Trust which holds a first priority mortgage secured by WDH Howell's real property. On or about October 8, 1997, WDH Howell executed a promissory note to the Trust in the amount of $9,000,000. Dr. Hurley executed a guaranty, and Criimi Mae alleges it is owed in excess of $16 million dollars by WDH Howell and Dr. Hurley.

Valerae Hurley, the non-debtor spouse of Dr. Hurley, seeks payment of one half of the tax refunds issued to her and her husband for the 1999 and 2000 tax years. For tax year 1999, a refund check payable to William D. & Valerae Hurley in the amount of $78,608.70 was issued on March 29, 2002. For tax year 2000, a refund check payable to William D. & Valerae Hurley in the amount of $167,999.00 was issued on November 16, 2001. One half of the tax proceeds totals $123,303.85. Mrs. Hurley certifies that she did not earn income during tax years 1999 and 2000, and that she and Dr. Hurley filed joint federal tax returns for those years.

### DISCUSSION

The issue presented for the court's determination is whether or not a non-debtor spouse is entitled to one half of a tax refund, where the parties filed a joint return and the non-debtor spouse earned no income for the tax years for which the returns were filed.

#### Property of the Estate

■ 11 U.S.C. § 541 provides that the filing of a case under Title 11 creates an estate. The estate is "comprised of all the following property, wherever located and

---

1. The New Jersey Department of Environmental Protection ["NJDEP"], a party in interest in the consolidated FEL and WDH Howell cases was not served with the original motion. In the interest of comity, the court permitted the NJDEP to file a post hearing submission in the form of an objection to the pending motion. The NJDEP's submission, however seeks affirmative relief from the court. If the NJDEP is seeking an order for turnover of the tax proceeds, it should be brought on motion in accordance with Fed. R. Bankr.Pro. 9013 and D.N.J. LBR 9013–1. If the NJDEP is seeking a denial of discharge, such request should be brought in accordance with Fed. R. Bankr.Pro. 7003 and D.N.J. LBR 7001–1.

by whomever held: (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Congress intended section 541 to be broad and inclusive. *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

Although the checks in dispute were issued post-petition, they are refunds from wages earned during pre-petition tax years and accordingly are included in the definition of estate property provided for in § 541. *See In re Christie*, 233 B.R. 110, 112 (10th Cir. BAP 1999), *citing, Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974); *see also In re Bernheim*, 62 B.R. 739 (Bankr.D.N.J.1986). It is well established that if property received post-petition is "sufficiently rooted in" a debtor's pre-petition actions and earnings, it is included in the estate. *Id.* The refund check for the 1999 tax year was issued on March 29, 2002 and the refund check for tax year 2000 was issued on November 16, 2001. The debtor filed his chapter 11 petition on May 24, 2001. In accordance with Congressional intent in drafting the bankruptcy code and the case law interpreting § 541, the refund checks stemming from the debtor's pre-petition wages are included in the debtor's bankruptcy estate.

### Three Approaches

The legal issue presented, whether or not a non-debtor spouse is entitled to one half of a tax overpayment, is one of first impression within the Third Circuit. Other circuits and bankruptcy courts have been presented with this issue and three lines of cases have emerged. *See In re*

---

**2.** In, *U.S. v. Elam*, 112 F.3d 1036 (9th Cir. 1997), Mrs. Elam sought one half of an overpayment issued to her and her ex-husband for a tax year during which they were married. The Ninth Circuit held that based on

*Lyall*, 191 B.R. 78, 85 (E.D.Va.1996). One line of cases holds that tax refunds should be distributed in accordance with the tax withholdings of the parties. *In re Kleinfeldt*, 287 B.R. 291 (10th Cir. BAP 2002) (further citations omitted).

A second line of cases holds that tax refunds should be distributed proportionally based on the income of the parties. *In re Kestner*, 9 B.R. 334 (Bankr.E.D.Va. 1981) (further citations omitted). For example, if a husband earns 40% of a couple's combined income, then he is entitled to 40% of the refund. The result of the first and second line of cases is that where the non-debtor spouse had neither withholdings nor income, she was not entitled to any portion of the refund and the tax refunds were solely property of the bankrupt spouse's estate.

A third minority outcome holds that a non income producing spouse is entitled to one half of the tax refund proceeds regardless of the parties income and withholdings. *In re Aldrich*, 250 B.R. 907 (Bankr. W.D.Tenn.2000).

One common ground among the three approaches, is that property rights are determined in accordance with state law. *See Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The *Aldrich* court based its holding on the fact that the state law at issue, Tennessee, provided for spouses to hold property "in any manner they choose" including "as tenants in common, individually, in partnerships, as life tenants, joint tenancy or any other manner." *Aldrich*, 250 B.R. at 910. The same analysis was used in California [2], based on its community property

California's community property laws, there was a presumption that the overpayment was community property belonging equally to husband and wife. The presumption, however was rebuttable, and since the husband and

laws. *See also In re Barnes*, 14 B.R. 788 (Bankr.N.D.Tex.1981)(analyzing ownership rights in a tax refund in relation to community property laws of Texas).

### New Jersey Law

New Jersey, unlike California and Texas, is not a community property state. *See Dodd v. U.S.*, 345 F.2d 715, 718 (3d Cir. 1965). Since New Jersey does not have community property laws, Mrs. Hurley does not have a fifty percent ownership interest in the tax refund.

Mrs. Hurley cites several divorce cases decided by the NJ courts as well as the NJ equitable distribution statutes in support of her contention. N.J.S.A. 2A:34–23.1[3] provides that in a divorce context, a nonemployed spouse is deemed to have made an equitable contribution to the marriage and therefore is entitled to an equitable distribution of the assets. Mrs. Hurley's reliance on the equitable distribution statutes and cases is unavailing, for the statute, found in the chapter titled "Actions for Divorce or Nullity of Marriage," limits its applicability to divorce proceedings. *See Carr v. Carr*, 120 N.J. 336, 576 A.2d 872 (1990)(holding that the equitable distribution statutes found at N.J.S.A. 2A:34–23, are not applicable upon the death of a spouse, rather they apply "when a judgment of divorce is entered.") *Id.* at 342, 576 A.2d 872.

Moreover, the policy rationale behind divorce and bankruptcy proceedings is sufficiently inapposite to distinguish the divorce cases. In divorce proceedings, a court is concerned with the equitable distribution of the assets between the spouses. *See Carr*, 120 N.J. 336, 576 A.2d 872. In bankruptcy proceedings, however, the court is concerned with the equitable distribution of assets among creditors of the debtor. *See Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233 (3d Cir.2001).[4] In this bankruptcy proceeding Mrs. Hurley is neither a creditor nor a debtor, as a non-party she is not entitled to equitable distribution. Although bankruptcy and divorce proceedings often coincide, here there is no divorce proceeding and Mrs. Hurley as a non-debtor and non-creditor does not possess an equitable right to distribution.[5]

N.J.S.A. § 2A:34–23.1 (2003).

4. Historical support for this proposition can be found in the Bible. *2 Kings* 4:1–7.

5. Mrs. Hurley cites *In the Matter of Hoffman*, 63 N.J. 69, 304 A.2d 721 (1973) as analogous to and supportive of her rights to equitable distribution. *Hoffman*, however is distinguishable because it addresses rights to a tax refund in the context of a divorce and a written contractual agreement between the ex-spouses. Within the separation agreement, the Hoffman's detailed the terms of the tax filings. The court found that contrary to the terms of the agreement, Mrs. Hoffman was entitled to a portion of the tax refund, because Mr. Hoffman had not fulfilled his obligations under the agreement. Additionally, the *Hoffman* case did not involve a bankruptcy proceeding.

wife entered into a prenuptial agreement providing that the husband's income was his separate property, the court remanded for findings on whether or not the prenuptial agreement rebutted the presumption.

3. Title 2A. Administration of Civil and Criminal Justice
    Subtitle 6. Civil Actions
        Chapter 34. Actions for Divorce or Nullity of Marriage
            Article 6. Alimony; Support; Maintenance
                Equitable Distribution Criteria
In making an equitable distribution of property, the court shall consider, but not be limited to, the following factors: ... It shall be a rebuttable presumption that each party made a substantial financial or nonfinancial contribution to the acquisition of income and property while the party was married.

In, *In the Matter of William T. Carson,* 83 N.J.Super. 287, 199 A.2d 407 (N.J.Super.1964), a New Jersey court addressed the distribution of tax refunds, in a probate context, and held that a widow was not entitled to half of the tax refund proceeds. It further determined that the tax refund was the property of the decedent's estate. A controlling factor for the *Carson* court was the fact that a joint tax return filing did not change ownership rights in the tax refund. This conclusion has been reiterated in later cases. *See Rosen v. U.S.,* 397 F.Supp. 342 (E.D.Pa.1975); *Callaway v. Comm'r. of Internal Revenue,* 231 F.3d 106 (2d Cir.2000).

This court finds that based on NJ law, Mrs. Hurley as a non-debtor and non-creditor does not possess an equitable right to distribution of the tax refunds. Additionally, following the precedent of the *Carson* court and the *Kleinfeldt* line of cases adopting the majority approach outlined above, Mrs. Hurley does not possess an interest in the tax returns where the parties filed a joint federal tax return and Mrs. Hurley earned no income for the 1999 and 2000 tax years.

Contrary to the movant's position, this court finds further that New Jersey law is most consistent with the cases in the majority who divide the tax return based on the parties respective withholdings. Based on the foregoing, the court is required to follow the majority approach in dividing the tax return based on the parties withholdings. Since Mrs. Hurley had no withholdings for tax years 1999 and 2000, she has no interest in the tax refund checks for those years. Accordingly, the tax overpayments for tax years 1999 and 2000 are property of Mr. Hurley's bankruptcy estate.

Mrs. Hurley presents three additional arguments in support of her position, and each is addressed below.

### Joint Liability/Ownership in Tax Refund 26 U.S.C. § 6013

Mrs. Hurley argues that since she is jointly liable for any tax deficiencies, she possesses an ownership interest in any tax refund. Mrs. Hurley's argument that her joint liability pursuant to 26 U.S.C. § 6013(d)(3) equates to joint ownership in an overpayment is supported by a minority of case law:

> Finally, and perhaps most importantly, I am persuaded that as the Hall's liability would be joint had taxes been due under the return, their right to the refund should likewise be joint. *Bass v. Hall,* 79 B.R. 653, 657 (W.D.Va.1987).

> [T]his court is further persuaded by the fact that it seems inconsistent and fundamentally unfair under these circumstances that a non-filing spouse is jointly responsible and liable for a joint federal income tax deficiency yet, ipso facto, prevented from reaping any portion of the deserved, good fortune of a tax refund. *In re Aldrich,* 250 B.R. at 912.

Mrs. Hurley is correct, in that 26 U.S.C. § 6013(d)(3) has been interpreted to hold a wife responsible "for the tax liability of her husband if they have filed a joint return, even though she neither incurred nor generated the income giving rise to the tax obligation." *Rosen v. U.S.,* 397 F.Supp. 342; *Sylk v. United States,* 331 F.Supp. 661, 663–64 (E.D.Pa.1971). The United States Tax Court, however, has consistently held that the filing of a joint tax return does not have the effect of converting the income of one spouse into the income of the other, regardless of each spouse's potential liability. *See Robert A. Coerver v. Commissioner of Internal Revenue,* 36 T.C. 252, 1961 WL 1128(1961), *aff'd. per curiam,* 297 F.2d 837 (3d Cir.1962).

That ownership rights are not altered based on a joint filing is further supported

by the Internal Revenue Code ["IRC"] and by courts interpreting it. The filing of a joint federal tax return is authorized by 26 U.S.C. § 6013(a). Section 6013(a), however does not affect the property rights in the proceeds of a federal tax refund check. *In re Taylor*, 22 B.R. 888, 890 (Bankr. N.D.Ohio 1982). Rather the basic purpose of the statute is to "equalize the tax burden of married couples in common law and community property states." *Id.* at 890, *citing Estate of Trecker*, 62 Wis.2d 446, 215 N.W.2d 450(1974). Section 6013 neither provides nor implies that any property rights in the proceeds are altered by a joint federal income tax filing. *In re Wetteroff*, 453 F.2d 544 (8th Cir.1972); *Estate of Carson*, 83 N.J.Super. 287, 199 A.2d 407. *See also, Butz v. Wheeler*, 17 B.R. 85 (Bankr.S.D.Ohio 1981)(reasoning that "the mere signing of a joint husband and wife tax return by the spouse with no income ... for the purpose of taking advantage of perceived tax advantages, [does not thereby effect a] metamorphosis ... converting the nature of the funds into the property of the other party.") *Id.* at 87–88.

Additionally, the IRC provides relief from liability to a spouse in certain situations. 26 U.S.C. § 6013. Mrs. Hurley may or may not have been jointly liable for potential tax obligations, however she was required to file a tax return, the fact that she chose to file jointly has no bearing on ownership of the tax refund. In signing the return she was fulfilling her obligation to file a tax return, and any liability she may have incurred is irrelevant to the parties respective property rights in the overpayment.[6]

### Joint Tenancy

Mrs. Hurley asserts that N.J.S.A. 54:4–8.56[7] provides a presumption that for property owned either as joint tenants or tenants in common, each individual's interest is equal to that of the other tenants. More accurately, the statute discusses joint tenancies in relation to the allowable tax deductions in property held in a joint tenancy. The court was unable to find any case law or statute applying joint tenancies to a tax refund.

Moreover, N.J.S.A. 46:3–17 provides, in part,

[N]o estate shall be considered and adjudged to be an estate in joint tenancy, except it be expressly set forth in the grant or devise creating such estate that it was or is the intention of the parties to create an estate in joint tenancy and not an estate of tenancy in common ...

The court was not presented with any grant or devise creating a joint tenancy or tenancy in common between the parties in relation to the tax refund.[8] Accordingly, the joint tenancy argument lacks merit.

---

**6.** It should be kept in mind that the filing of a joint return is voluntary. If a spouse is concerned with liability, the filing of a separate return insulates the non-income producing spouse from any tax liability. *See Maragon v. U.S.*, 139 Ct.Cl. 544, 153 F.Supp. 365 (Ct.Cl. 1957).

**7.** N.J.S.A. 54:4–8.46 provides, in part;
Where title to property as to which a deduction is claimed is held by claimant and others, either as tenants in common or as joint tenants, claimant shall not be allowed a deduction in an amount in excess of his proportionate share of the taxes accessed against said property, which proportionate share, for the purposes of this act, shall be deemed to be equal to that of each of the other tenants, unless it is shown that the interests in question are not equal, in which event claimant's proportionate share shall be shown....

**8.** *See In re Ballou*, 12 B.R. 611 (Bankr.D.Kan.1981)(applying Kansas joint tenancy law to reject debtor's argument that he and his non-debtor spouse hold their tax refund as joint tenants or tenants in common.)

### UCC Article III

 Lastly, the movant argues that she possesses an ownership interest in the tax refund because she is a named payee on the check issued by the IRS. This issue was raised and rejected by Judge Anderson in *Butz, supra* 17 B.R. 85. "The fact that the checks name both debtors as payees, and thus are not transferable without Mrs. Wheeler's signature, O.R.C. 1303.15(B), (UCC 3–116) does not alter the underlying property rights in any of the proceeds." *See also In re Taylor,* 22 B.R. 888. The checks at issue in *Butz* were tax refund checks, and one spouse, Mrs. Wheeler, raised the argument voiced here by Mrs. Hurley.

To find that property rights in a tax refund are determined by the named payees is inconsistent with the cases that have held that a joint filing does not convert the income of one spouse into income of the other.[9] Based on the analysis in *Butz,* and the cases cited above holding that the ownership interest in a federal income tax overpayment is determined by the contributions to the income and withholdings giving rise to the overpayment, the court rejects the argument presented here.

### CONCLUSION

In accordance with the foregoing, the court finds that the tax overpayments at issue are the property of the debtor's bankruptcy estate. Since Mrs. Hurley had no tax withholdings for taxable years 1999 and 2000 she does not have an ownership interest in the tax refunds. Additionally, Mrs. Hurley is not entitled to an equitable distribution of the tax overpayments because she is neither a debtor nor a creditor in these proceedings. Accordingly, Mrs. Hurley's motion for turnover is **DENIED.**

9. *See Wetteroff,* 453 F.2d 544; *Coerver,* 36 T.C. 252, 1961 WL 1128; *Rosen,* 397 F.Supp. 342; *Carson,* 83 N.J.Super. 287, 199 A.2d 407; *Sylk,* 331 F.Supp. 661 and *Callaway,* 231 F.3d 106.

Counsel for Criimi Mae is directed to submit an order consistent with this opinion within ten days of the date hereof.