# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 08-6013

_____

In re:  Brian Jay Carlson and     *
       Coalee Breanna Carlson,     *
       *
Debtors     *
       *

Coalee Breanna Carlson,     *    Appeal from the United States
       *    Bankruptcy Court for the
    Debtor - Appellant     *    District of Minnesota
       *
       v.     *
       *

Timothy D Moratzka,     *
       *
    Trustee - Appellee     *

_____

Submitted:  August 26, 2008
Filed: September 10, 2008

_____

Before FEDERMAN, MAHONEY and VENTERS, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

Debtor Coalee Carlson appeals the Bankruptcy Court's[1] Order sustaining the Chapter 7 Trustee's objection to her claimed exemption in an income tax refund. The basis for the objection was that she did not earn any of the income or pay any of the withholdings to which the refund was attributable. For the reasons that follow, we affirm.

The facts in this case are undisputed. Coalee Carlson and her husband, Brian Carlson, filed a joint Chapter 7 petition on January 8, 2008. After they filed their bankruptcy petition, they filed joint state and federal tax returns for 2007 and received tax refund checks totaling $13,842. Brian was the sole wage-earner during 2007; Coalee was a homemaker and earned no income. The Carlsons say that they deposited the refund checks into a joint bank account and used the funds to pay household bills. They each claimed half of the refunds as exempt on their Schedule C. Brian does not have enough available exemptions to claim the entire amount of the refunds exempt himself, and without Coalee's exemption, $6,186.47 would be non-exempt. The Chapter 7 Trustee objected to Coalee's claiming the exemption because Brian was the sole wage earner in 2007 and, thus, the refunds were entirely his property. The Trustee argued that Coalee had no property interest in the refunds and thus was not entitled to claim exemptions in them. The Bankruptcy Court sustained the Trustee's objection and Coalee appeals.

---

[1] The Honorable Nancy C. Dreher, Chief Bankruptcy Judge, United States Bankruptcy Court for the District of Minnesota.

The BAP reviews findings of fact for clear error, and legal conclusions *de novo.*[2] Since the facts are undisputed, and the resolution of this case involves only issues of law, our review is *de novo.*[3]

A tax refund that is received post-petition is property of the estate if it is attributable to wages earned and withholding payments made during prepetition years.[4] Even though the Carlsons filed a joint bankruptcy petition, the Bankruptcy Code views the two of them as separate debtors with separate estates, and the Carlsons must claim exemptions individually under § 522(m) of the Bankruptcy Code.[5] The question here is whether Coalee has an ownership interest in a portion of the tax refunds such that she may claim an exemption in them.

The parties correctly point out that bankruptcy courts have essentially taken three approaches to the allocation of income tax refunds between spouses who file a

---

[2] *First Nat'l Bank of Olathe v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997); Fed. R. Bankr. P. 8013.

[3] *In re Klienfeldt*, 287 B.R. 291, 292 (B.A.P. 10th Cir. 2002).

[4] *In re Benn*, 491 F.3d 811, 813 (8th Cir. 2007) ("A debtor's anticipated tax refund, to the extent it is attributable to events occurring prior to the filing of the petition for bankruptcy, is part of the bankruptcy estate.").

[5] *See Thomas v. Peyton*, 274 B.R. 450, 456 (E.D. Va. 2001) ("When spouses file a joint petition for bankruptcy, the separate estates are administratively consolidated for convenience and efficiency but they remain legally distinct for purposes of satisfying creditors' claims."); *In re Beck*, 298 B.R. 616, 624 (Bankr. W.D. Mo. 2003) ("Although the filing of a joint case creates an estate under 11 U.S.C. § 541, separate estates exist for each debtor, unless or until the court orders substantive consolidation."); 11 U.S.C. § 522(m) ("Subject to the limitation in subsection (b), this section shall apply separately with respect to each debtor in a joint case.").

joint tax return, where one of them is the main or sole income earner.[6] The first approach, referred to as the majority approach, allocates the joint tax refund between the spouses in proportion to their respective tax withholdings.[7] This is the approach relied on by the cases cited by the Bankruptcy Court, with which we agree. Similarly, the second approach divides the refund according to the income generated by each spouse.[8] In this particular case, because Coalee had no income, and no withholding, the result under the first and second approaches would be the same. The third approach, argued here by the Carlsons, would split the refund equally between the spouses, regardless of the source of the income or tax withholding.[9]

The parties agree that we should apply Minnesota law to determine who owns the income tax refunds and, therefore, who may claim an exemption in them. However, they point to no Minnesota law directly addressing this particular issue, and we found none. The parties further agree that Minnesota is neither a community property nor a tenancy by entireties state, and, in general, has no presumption of equal ownership between spouses. Rather, with certain limited exceptions, a spouse in Minnesota is presumed to separately own property titled in his or her own name.[10] As

---

[6] *See In re Klienfeldt*, 287 B.R. at 292 (listing the three approaches) (*citing In re Lyall*, 191 B.R. 78, 85 (E.D. Va. 1996)).

[7] *See, e.g., Kleinfeldt*, 287 B.R. at 292-93; *In re WDH Howell*, 294 B.R. 613, 618 (Bankr. D. N.J. 2003); *In re Levine*, 50 B.R. 587 (Bankr. S.D. Fla. 1985).

[8] *See, e.g., In re Kestner*, 9 B.R. 334 (Bankr. E.D. Va. 1981).

[9] *See, e.g., In re Trickett*, ___ B.R. ____, 2008 WL 2885731 (Bankr. D. Mass. July 25, 2008); *In re Marciano*, 372 B.R. 211 (Bankr. S.D. N.Y. 2007). *In re Barrow*, 306 B.R. 28 (Bankr. W.D. N.Y. 2004); *In re Hejmowski*, 296 B.R. 645 (Bankr. W.D. N.Y. 2003); *Loevy v. Aldrich (In re Aldrich)*, 250 B.R. 907, 913 (Bankr. W.D. Tenn. 2000).

[10] *See* Minn. Stat. Ann. § 519.01 (declaring that women shall retain the same legal existence and legal personality after marriage as before, and that every married woman shall receive the same protection of her rights as a woman which her husband does as a man, including the right to sue in her own name) and § 519.02 (providing that all property

4

particularly relevant here, Coalee's counsel candidly conceded at oral argument that the Bankruptcy Court was correct when it stated that a spouse's income (or paycheck) is considered to be that spouse's separate property in Minnesota, until that spouse takes some action to convert it to joint property or otherwise convey it to the other spouse. It follows, then, that the taxes withheld from such spouse's income would likewise be that spouse's property and, since a tax refund essentially represents the government's repayment to the taxpayer of an overpayment made by that taxpayer,[11] such a refund is the property of the spouse who earned the income and overpaid the tax.

Coalee contends, however, that we should look to Minnesota's marital dissolution laws for guidance, as many of the courts applying the 50/50 split of such refunds have done.[12] Coalee points to § 518.003 of the Minnesota Statutes, which provides that, for purposes of marital dissolution, property acquired by either spouse subsequent to the marriage is presumed to be jointly-owned marital property regardless of whether title is held individually or by the spouses in a form of co-ownership.[13] Further, Minnesota law provides that, in the context of a dissolution of marriage, the court shall make a just and equitable division of the marital property, considering all relevant factors, including the contribution of a spouse as a homemaker.[14]

---

owned by a woman at the time of her marriage shall continue to be her separate property after marriage, and that any married woman may acquire property free from the control of her husband as fully as if she were unmarried).

[11] *See Kleinfeldt*, 287 B.R. at 293.

[12] *See, e.g., Aldrich*, 250 B.R. at 911; *Hejmowski*, 296 B.R. at 650.

[13] Minn. Stat. Ann. § 518.003, subd. 3b (2007).

[14] Minn. Stat. Ann. § 518.58, subd. 1 (2007). *See also Crace v. Crace*, 396 N.W.2d 877, 881 (Minn. App. 1986) (holding that a marital dissolution court's equal division of potential refunds resulting from joint tax returns was not error under §

5

Although some bankruptcy courts in other states have looked to their marital statutes for guidance, we agree with the Bankruptcy Court here that such reliance is misplaced in this context, particularly since § 518.003 (which, as stated above, provides for the presumption of equal ownership of marital property) expressly states that its terms apply only in marital dissolution proceedings.[15]

In addition, the marital dissolution statutes providing for a presumption of equal ownership in that context have different goals and policy rationales than the Bankruptcy Code does. Marital dissolution laws are intended to accomplish an equitable distribution of assets between spouses. The presumption of equal ownership comports with that purpose. In contrast, the bankruptcy scheme promotes an equitable distribution among debtors' creditors. Equitable issues as between co-debtor spouses are not relevant to this analysis.[16] As a result, even disregarding the express limitation of Minnesota's marriage dissolution statutes to divorce cases, the reliance on such statutes is not appropriate in bankruptcy cases.

Coalee next argues that, if the wages and withholdings were her husband's property when they were earned, the filing of joint tax returns and/or the depositing of the joint refund checks into a joint account transformed the refunds into joint property. To the contrary, however, both the IRS and the Minnesota Department of Revenue treat a refund as credited to the taxpayer who made the overpayment of the

---

518.58); *Rundell v. Rundell*, 423 N.W.2d 77, 81 (Minn. App. 1988) (holding that a marital dissolution court's determination that an expected tax refund was a marital asset and awarding it to the husband was not error).

[15] Minn. Stat. Ann. § 518.003, subd. 1 (2007). *Accord In re Lock*, 329 B.R. 856, 859 (Bankr. S.D. Ill. 2005) (applying Illinois law, which similarly limits the application of its marital dissolution statute to divorce cases).

[16] *Accord WDH Howell*, 294 B.R. at 617.

6

tax,[17] regardless of whether a joint return is filed. Consistent with that premise, the Eighth Circuit in *Wetteroff* held that the Internal Revenue Code provision allowing a husband and wife to file a joint tax return does not affect or change ownership rights between the taxpayers.[18] The Eighth Circuit further suggested that a joint tax return cannot be viewed as a conveyancing instrument because it contains no language of conveyance.[19] Therefore, the Eighth Circuit held, the debtors in *Wetteroff* failed to establish that a refund based on the husband's income was held by the spouses as a tenancy by the entirety under Missouri law.[20] As the Trustee urges, this would also be true under Minnesota law because of the presumption that spouses own property separately unless there is an act of conveyance to the other spouse.[21]

---

[17] 26 U.S.C. § 6402(a) (directing the treasury secretary to credit and refund any overpayment of tax to "the person who made the overpayment"); Minn. Stat. Ann. § 289A.50 (stating that "a taxpayer *who has paid a tax* in excess of the taxes lawfully due . . . will be refunded or credited with the overpayment") (emphasis added).

[18] *In re Wetteroff*, 453 F.2d 544, 546 (8th Cir. 1972).

[19] *Id.*

[20] *Id. See also Kleinfeldt*, 287 B.R. at 293 (*citing Callaway v. Commissioner of Internal Revenue*, 231 F.3d 106, 117 (2d Cir. 2000) (holding that the filing of a joint tax return does not convert the income of one spouse into income of another spouse)); *United States v. Elam*, 112 F.3d 1036, 1038 (9th Cir. 1997) ("[a] joint return does not itself create equal property interests for each party in a refund [and] [s]pouses who file a joint return have separate interests in any overpayment, the interest of each depending upon his or her relative contribution to the overpaid tax."); *WDH Howell LLC*, 294 B.R. at 619-20 (holding that neither the filing of a joint return, nor the issuance of a joint refund check, transforms the refund into joint property).

[21] In this particular case, if the Carlsons were correct that the filing of the joint tax returns and/or the deposit of the refunds into a joint account transformed them into joint property, then the transformation into joint property would have been an avoidable transfer of estate assets from Brian to Coalee because property rights are fixed as of the date of the filing of the bankruptcy petition, and the Carlsons filed the joint returns after they filed their petition.

7

Coalee asserts that she should also be considered to be the owner of half of the refunds for policy reasons. First, she asserts that it is inconsistent and fundamentally unfair to make both spouses liable for tax liability on a joint return regardless of the respective incomes, but to then say that the non-income-earner is entitled to none of the refund.[22] However, that is how the IRS views the situation[23] and, as the Court in *WDH Howell* pointed out, taxpayers have a choice as to whether to file a joint income tax return.[24] They often do so in order to benefit from perceived tax advantages. However, "this [does] nothing to alter the fact that the overpayment of tax withholdings which ultimately resulted in a tax refund clearly came from the Debtor."[25]

---

[22] *See Aldrich*, 250 B.R. at 912 (holding that it was "inconsistent and fundamentally unfair" to hold a spouse jointly liable for a tax deficiency debt but prevent her from reaping any portion of the good fortune of a tax refund). *But see WDH Howell*, 294 B.R. at 618 (stating that 26 U.S.C. § 6013(d)(3) has been interpreted to hold a wife responsible for the tax liability of her husband if they have filed a joint return, even though she did not earn the income giving rise to the tax obligation, but expressly disagreeing with *Aldrich* that it was fundamentally unfair to hold that the wife did not have a property interest in the refund).

[23] *See WDH Howell*, 294 B.R. at 618 (noting that the "United States Tax Court, however, has consistently held that the filing of a joint tax return does not have the effect of converting the income of one spouse into the income of the other, regardless of each spouse's potential liability") (*citing Robert A. Coerver v. Commissioner of Internal Revenue*, 36 T.C. 252, 1961 WL 1128 (1961), *aff'd per curiam*, 297 F.2d 837 (3d Cir 1962)).

[24] 294 B.R. at 619 and n.6 ("If a spouse is concerned with liability [for filing a joint tax return], the filing of a separate return insulates the non-income producing spouse from any tax liability.") (citation omitted).

[25] *Kleinfeldt*, 287 B.R. at 295.

Coalee also asserts that it is insulting to stay-at-home parents to not allocate any portion of income tax refunds to them.[26] That may be true in the context of a marital dissolution proceeding because, as stated above, the issue in those cases is an equitable division of property as between the spouses. However, as stated, the goal in bankruptcy, in contrast, is to create equity among the spouses' creditors. Allowing debtors to "transform" separate property to joint property, with the result being to allow a co-debtor spouse to claim an exemption in property she does not own, or to allow a non-debtor spouse to keep half a tax refund out of the debtor-spouse's estate, is not equitable.

Coalee next argues that she should be given credit for the part of the refunds that were based on Child Tax and Child and Dependent Expense Credits because she was the primary caretaker of the children. However, these credits are not based on those types of considerations. Rather, in order to receive either credit, the child must be a dependent or "qualifying child" of the claimant, which, as the Trustee suggests, appears to require at least some amount of financial support,[27] and, in the case of the Child and Dependent Care Credit, the taxpayer must have actually paid the child care expenses.[28] Thus, even assuming a taxpayer could receive a refund for these credits while having no tax liability or withholdings against which they could be credited, it appears unlikely that Coalee would have been able to claim the credits if she had filed a separate return because she did not provide financial support or pay any of the child

---

[26] *See Aldrich*, 250 B.R. at 912.

[27] *See* 26 U.S.C. §§ 24(c) and 152(c). *See also Nobles v. CIR,* T.C. Memo. 2007-277, 2007 WL 2687617 (Sept. 13, 2007) (denying a child tax credit because the petitioner could not substantiate the dollar amount he paid towards the support of the children).

[28] 26 U.S.C. § 21(b)(2)(A) ("The term 'employment-related expenses' means *amounts paid* for the following expenses, but only if such expenses are incurred to enable the taxpayer to be gainfully employed . . . [for] expenses for the care of a qualifying individual.") (emphasis added).

care expenses. However, we need not decide that here, because Coalee chose not to file a separate return. Since she incurred none of the tax liability against which the credits were actually applied, Coalee is not entitled to claim a property interest in the refunds based on those credits.

Finally, Coalee argues that the 50/50 approach is preferable because it provides a bright line test.[29] However, the allocation of a refund based on the spouses' respective withholdings would not appear to be a difficult task in most cases. In addition, while we see the value in courts adopting bright line tests for simplicity in appropriate circumstances, it is not appropriate to do so if that is contrary to the law.

In sum, we conclude that the Bankruptcy Court did not err in finding that, in Minnesota, a spouse who did not pay any of the withholdings to which a joint income tax refund is attributable has no ownership interest in the refund.[30] As a result, Coalee was not entitled to claim exemptions in the refunds resulting solely from Brian's withholdings. The Bankruptcy Court's Order sustaining the Trustee's objection to her exemption is, therefore, AFFIRMED.

---

[29] *See Trickett*, 2008 WL 2885731 at *5.

[30] Two Minnesota courts have likewise concluded that a joint tax refund should be allocated in proportion to the respective withheld tax contributions, albeit on equitable grounds and expressly limited to the facts of those cases. *See In re Buchholtz*, 259 F. Supp. 31, 32 (D. Minn. 1966); *In re Jones,* 337 F. Supp. 620 (D. Minn. 1971).