In the Matter of William Dwight
EVANS, Allie Darlene
Evans, Debtors.

No. 10–10077–WHD.

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

Dec. 28, 2010.

Charlotte C. Thacker, Griffin, GA, Debtors.

### *ORDER*

Before the Court is the Objection to Exemption filed by Theo David Mann (hereinafter the "Trustee"). The Trustee asserts that Mrs. Evans' exemption of a portion of the couple's joint tax refund should be disallowed because no portion of the tax refund is property of Mrs. Evans' bankruptcy estate. Accordingly, the Court must determine the ownership of the joint tax refund at the time Mr. and Mrs. Evans filed their Chapter 7 petition. This matter constitutes a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. § 1334; § 157(b)(2)(B).

### BACKGROUND AND PROCEDURAL HISTORY

William and Allie Evans (hereinafter the "Debtors") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on January 9, 2010. Theo Davis Mann (hereinafter the "Trustee") was appointed as the Chapter 7 Trustee. On Schedule B, the Debtors disclosed an anticipated tax refund of $7,000 for tax year 2009, which they asserted was a joint asset. The amount of the actual refund was $6,903. On Schedule C, the Debtors each claimed one half of the entire refund as exempt, pursuant to O.C.G.A. § 44–13–100(a)(6). On March 3, 2010, the Trustee objected to the Debtors' claimed exemptions on the basis that the refund is actually the sole property of Mr. Evans, and Mr. Evans has available an exemption of only $5,600, which is insufficient to exempt the entire refund.

The parties appear to agree that only Mr. Evans is employed outside the home. Mr. Evans earns approximately $30,000 per year. Additionally, the Debtors claim two dependents on their income tax return, Mrs. Evans' grandson and granddaughter, for whom Mrs. Evans receives $300 per month contributed by their mother and $235 per month in government

assistance. During the 2009 tax year, the Debtors' joint income tax liability was $599, which arose from Mr. Evans' wages of $26,782, the early liquidation of a pension in the amount of $5,987, and interest income of $10. After applicable deductions and exemptions, the Debtors' combined taxable income was $2,129. Tax withholdings from Mr. Evans' wages totaled $976, and $1,015 were withheld from the proceeds of the liquidated pension. Consequently, $1,392 of the funds withheld were refunded to the Debtors, and the Debtors received additional amounts arising from the Making Work Pay Credit ($800), the Earned Income Tax Credit ($2,637), and the Additional Child Tax Credit ($1,786).

On April 2, 2010, the Debtors amended Schedule B to disclose the actual amount of the tax refund as $6,903 ($6,615 of which arose from the Federal tax return and $288 which arose from the Georgia return) and amended Schedule C to claim $4,866 of the refund as exempt property of Mr. Evans and $2,037 of the refund as exempt property of Mrs. Evans. Following a hearing held on June 18, 2010, the Court took the matter under advisement.

### CONCLUSIONS OF LAW

Before the Court is the question of whether the Debtors are each entitled to exempt a portion of the income tax refund pursuant to Section 44–13–100(a)(6) of the Official Code of Georgia. To determine whether the Trustee's objection should be sustained, the Court must determine the relative property interests of the Debtors in the refund. *See In re Carlson,* 394 B.R. 491 (8th Cir. BAP 2008).

■ A bankruptcy court must apply applicable state law to determine whether a debtor held a property interest at the time the petition was filed. *See Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The parties have cited, and the Court has found, no Georgia case law that addresses the question of how to apportion a joint tax refund between married taxpayers who are not seeking the dissolution of the marriage. In the absence of state court precedence, bankruptcy courts have generally applied three methods to determine the ownership of such joint tax refunds.

One method of dividing the joint refund is to do so in proportion to the amount of income earned by each spouse. *See In re Verill,* 17 B.R. 652 (Bankr.Md.1982). A second group of cases divides the refund based upon the amount of income withheld from each spouse's income. *See In re Kleinfeldt,* 287 B.R. 291 (10th Cir. BAP 2002) (non-debtor homemaker spouse was not entitled to any portion of the tax refund generated by withholding from the debtor's wage because she had no tax withholdings; the filing of a joint tax return does not convert one spouse's income into the income of the other); *In re WDH Howell, LLC,* 294 B.R. 613 (Bankr.D.N.J. 2003). Under the third line of authority, the court divides the refund evenly between the spouses, regardless of the income generated by each spouse. These cases are based on three basic principles: 1) state matrimonial law applicable upon the dissolution of the marriage would entitle each spouse to an equal share of the refund; 2) denying one spouse an interest in the tax refund, while holding that spouse liable for any tax owed under a joint return, is inequitable; and 3) denying a homemaker spouse an economic interest in the refund undervalues the economic contribution of a homemaker to the family. *See In re Aldrich,* 250 B.R. 907 (Bankr. W.D.Tenn.2000); *In re Barrow,* 306 B.R. 28 (Bankr.W.D.N.Y.2004); *In re Marciano,* 372 B.R. 211 (Bankr.S.D.N.Y.2007).

For the reasons stated by the Eighth Circuit Bankruptcy Appellate Panel in *In re Carlson,* 394 B.R. 491 (8th Cir.BAP

2008), the Court agrees that relying upon the treatment of a tax refund in the event the debtors divorce is not appropriate. The relevant inquiry is not whether Mrs. Evans might be entitled to seek an equitable distribution of the funds upon some future dissolution of the marriage, but rather, whether she had a right to the funds at the time of the filing and whether that right subsequently became part of her bankruptcy estate, as opposed to her husband's bankruptcy estate. As the court noted in *Carlson*, the goal of marital dissolution law is to equitably distribute assets between spouses, whereas the question of property ownership in this instance implicates the rights of each of the debtor's creditors to each of the debtor's assets. *See also In re Crowson*, 431 B.R. 484, 489 (10th Cir.BAP2010).

The Debtors encourage the Court to respect the "family unit" by treating the Debtors as one. These Debtors' estates are administered jointly pursuant to section 302(b). They have not been substantively consolidated. *See In re Blair*, 226 B.R. 502, 506 (Bankr.D.Me.1998). While this legal conclusion may be a distinction without a difference in cases in which the spouses own jointly all assets and owe jointly all debts, it is relevant in cases in which one spouse owns significant amounts of separate property or owes significant amounts of debt upon which the other spouse is not obligated. In such cases, determining the proper apportionment of the spouses' assets is important to the trustee and the creditors and also respects the fact that the Code anticipates married debtors in a joint case will make separate claims to exemptions. *See Carlson*, 394 B.R. at 497 ("Allowing debtors to 'transform' separate property to joint property, with the result being to allow a co-debtor spouse to claim an exemption in property she does not own, or to allow a non-debtor spouse to keep half a tax refund out of the debtor-spouse's estate, is not equitable."); *see also* 11 U.S.C. § 522(m). Contrary to the Debtors' suggestion, the Trustee is not asking the Court to change its position on the apportionment of a joint asset. The law has always required the Court to respect the individual ownership of property by spouses in a joint case unless the cases have been substantively consolidated.

■■■ Those bankruptcy courts adopting what is often referred to as the "majority" rule—that the refund should be divided based upon the withholding—have done so in reliance upon the fact that the applicable state law does not presume equal ownership of property by spouses. *See Carlson*, 394 B.R. at 494 (applying Minnesota law); *In re Smith*, 310 B.R. 320 (Bankr.N.D.Ohio 2004) (applying Ohio law). Georgia law, like that applicable in the *Carlson* case, has no presumption of equal ownership of property between spouses. *See* O.C.G.A. § 19–3–9 ("The separate property of each spouse shall remain the separate property of that spouse, except as provided in Chapters 5 and 6 of this title and except as otherwise provided by law."). The funds earned by one spouse from employment during the marriage, therefore, remain the separate property of that spouse unless the spouse takes an action to transfer an interest in those funds to the other spouse or the parties divorce and a court divides the funds equitably. As noted in *Carlson*, the "tax refund essentially represents the government's repayment to the taxpayer of an overpayment made by that taxpayer," and, consequently, "such a refund is the property of the spouse who earned the income and overpaid the tax." *Carlson*, 394 B.R. at 494. The filing of a joint income tax return is not a sufficient action to transfer the property from one spouse to another. *See id.; see also In re WDH Howell, LLC*, 294 B.R. 613, 619–20 (Bankr.D.N.J.2003);

*Gordon v. United States,* 757 F.2d 1157 (11th Cir.1985) ("Where spouses claim a refund under a joint return, the refund is divided between the spouses, with each receiving a percentage of the refund equivalent to his or her proportion of the withheld tax payments."); *United States of America v. MacPhail,* 2005 WL 2206681, at *3 (6th Cir.2005) (in the case of joint filers, the filing of a joint return does not convert the income of one spouse to the income of another and, accordingly, an overpayment of tax should be disbursed to the person who made the overpayment).

That being said, the Court agrees with the reasoning of the court in *In re Barrow,* 306 B.R. 28 (Bankr.W.D.N.Y.2004), that an irrebuttable presumption that the joint tax refund is owned in proportion to the amount of tax withholdings is not appropriate. As the Debtors have argued, and the *Barrow* court remarked upon, the reality is that a tax refund, especially when dealing with lower income debtors, likely results from refundable tax credits, rather than withholdings from wages or estimated tax payments. *See also Crowson,* 431 B.R. at 490 (noting that the Internal Revenue Code treats refundable tax credits as "payments" toward tax liability). When the tax refund itself exceeds the amount of the withholding from either spouse, dividing the refund solely in accordance with the amount withheld from wages makes no sense.

■ Instead, the Court concludes that the method applied in *In re Crowson* is appropriate. This method is based upon guidance from the Internal Revenue Manual applicable when the Internal Revenue Service must allocate tax liability and credits between married taxpayers who file joint returns. *Crowson,* 431 B.R. at 491. Applying the allocation method used by the court in *Crowson,* the Court can calculate the portion of the tax liability and the

portion of the payments made, including refundable credits, attributable to each spouse and, therefore, determine the ownership of the refund.

The analysis first requires a calculation of each debtor's share of the joint tax liability and each debtor's separate "contribution to the 'total payments'" made. *Id.* Each debtor's "share of the joint tax liability is then subtracted from the sum of all of his or her contributions to the 'total payments,' resulting in a figure representing that party's share of the joint refund." *Id.* at 492. The "total payments" include "taxes withheld, estimated tax payments, and other out-of-pocket payments," as well as "credits such as the earned income credit, the additional child tax credit, and rebate credits." *Id.* (citing 26 U.S.C. § 6401(b); Rev. Rul. 80–7; Rev. Rul. 87–52).

■ First, "each spouse must calculate what tax liability he or she would have incurred on his or her separate income" by preparing a hypothetical "married filing separately" ("MFS") return. This tax liability is then divided by the sum of both party's liabilities to create a percentage. For example, if the husband's MFS liability is $250 and the wife's MFS liability is $400, the sum of the MFS liability is $650. The husband's percentage of the total MFS liability is 38% and the wife's percentage is 62%. This percentage is then used to allocate the respective percentages of the actual married filing jointly ("MFJ") liability. For example, if the actual MFJ liability is $500, the husband's portion of the liability would be $190 (38% of $500) and the wife's portion would be $310 (62% of $500).

Second, to calculate each spouse's contribution to the total payments, the Court calculates each spouses' contributions to each type of payment as follows:

■ **Withholding Contributions:** "Withholding-based payments are deemed contributions by the spouse whose income was withheld." *Id.* For instance, here, Mr. Evans had $976 withheld from his wages and whoever owned the pension that was liquidated had funds in the amount of $1,015 withheld.

■ **Earned Income Tax Credit:** The formula for determining a spouse's contribution to the EIC "payment" is as follows: First, determine the amount each spouse would receive as an EIC if he or she filed a return reflecting only his or her income, using the EIC tables and the same number of qualifying dependents used to compute the EIC on the joint return. *Id.* at 493 (citing Rev. Rul. 87–52; IRM § 21.4.6.5.11.2(4)). Second, "use the spouses' hypothetical separate EICs to calculate their 'contributions' to the actual joint EIC" received in the actual refund. As with the hypothetical MFS liability, each spouse's hypothetical separate EIC is divided by the total of spouses' hypothetical separate EICs to create a percentage for each spouse. The percentages are then applied to the actual joint EIC to produce each debtor's portion of the actual joint EIC. *Id.* at 493–94. For example, assume the debtors' actual joint EIC is $3,901, with the husband's hypothetical separate EIC being $4,030 and the wife's hypothetical separate EIC being $3,170. The total hypothetical EIC is $7,200. The husband's percentage of the total hypothetical EIC is 56% ($4,030 ÷ $7,200), and the wife's percentage of the total hypothetical EIC is 44% ($3,170 ÷ 7,200). Applying the respective percentages to the actual joint EIC results in the husband claiming $2,184.56 (56% of $3,901) of the actual joint EIC and the wife claiming $1716.44 (44% of $3,901) of the actual joint EIC.

■ **The Additional Child Tax Credit ("ACTC"):** Each spouses' contribution to the ACTC is calculated using the same percentage applied to determine the relative contributions to the EIC. *Id.* at 494.

■ **Making Work Pay Credit:** Since the Making Work Pay Credit ("MWPC") is a percentage of a taxpayer's earned income, it seems reasonable to apply the same percentage used to determine the relative contributions to the EIC to determine the relative contributions to the MWPC.

Finally, the Court calculates the amount that should be considered "refunded" to each spouse. Each spouse's contribution to payments is totaled and each spouse's share of the actual married filing jointly liability is subtracted from that spouse's contribution to the total payments. *Id.* at 495.

Here, the Court lacks the information necessary to complete the calculations discussed above. Accordingly, the Court will allow the parties an opportunity to consider the Court's adoption of the formula applied in the *Crowson* case. After doing so, if the parties believe that the Court's guidance is required to determine whether any portion of the refund would be attributable to Mrs. Evans' estate under these guidelines, the parties are free to submit further briefs with stipulated facts or to request an evidentiary hearing to resolve this matter and may do so within thirty (30) days of the entry of this Order.