**In re Paul HEJMOWSKI, Janice E. Hejmowski, Debtors.**

No. 03–10441 K.

United States Bankruptcy Court, W.D. New York.

July 17, 2003.

Mark J. Schlant, Buffalo, NY, for Trustee.

Peter D. Grubea, Buffalo, NY, for Debtor.

MICHAEL J. KAPLAN, Bankruptcy Judge.

The Court writes to express its agreement with the result reached in *In re Aldrich,* 250 B.R. 907 (Bankr.W.D.Tenn. 2000) and its disagreement with the reasoning and result reached in *In re Kleinfeldt,* 287 B.R. 291 (10th Cir. BAP 2002).[1]

The question is this: for § 541 and § 522 purposes only, is the joint taxpayers' income tax "refund" owned by both spouses even if only one has income, and, if so, is it owned equally or in some sort of pro rata shares.[2] This writer finds that for § 541 and § 522 purposes only,[3] the "refund" is owned jointly, and in equal shares.

1. There are many other cases. The minority approach had been set forth in *Bass v. Hall,* 79 B.R. 653 (W.D.Va.1987). That approach looks to state law standards and matrimonial law treatment of substantive property rights which consider the substantial contribution of a stay-at-home spouse when determining equitable distribution of property. Furthermore, the Internal Revenue Code imposes joint and several liability for any tax deficiency regardless of which spouse generated the taxable income. The courts reasoned that if a non-filing spouse would be liable for any deficiency it would be unjust to deny that person an ownership interest in the event of a refund. Lastly, the minority courts rationalized that joint tax refunds should be treated with the same presumption of equal ownership as other negotiable instruments. These courts divided the tax refund equally between the spouses after taking into account all the facts and circumstances of each case.

A second approach allocates the joint tax return based on the income produced by the married taxpayers. See *In re Levine,* 50 B.R. 587 (Bankr.S.D.Fla.1985); *In re Verill,* 17 B.R. 652 (Bankr.D.Md.1982); *In re Kestner,* 9 B.R. 334 (Bankr.E.D.Va.1981); *In re Colbert,* 5 B.R. 646 (Bankr.S.D.Ohio 1980). The courts reasoned that although signing a joint return would lead to joint and several liability it would not give rise to a change of ownership of the property and a non-income producing spouse would have no property interest in any refund. The bankruptcy code requires a debtor to have a property interest in the property being claimed as exempt. The courts reasoned that the debtor would be eligible for an exemption in the tax refund only in proportion to the income they produced.

The majority approach determined that where there is a joint tax refund the income should be allocated between the spouses in proportion to their tax withholdings. See *In re McFarland,* 170 B.R. 613 (Bankr.S.D.Ohio 1994); *In re Honomichl,* 82 B.R. 92 (Bankr. S.D.Iowa 1987); *In re Alden,* 73 B.R. 215 (Bankr.N.D.Fla.1986); *In re Ballou,* 12 B.R. 611 (Bankr.D.Kan.1981). In reaching their conclusion these courts rely on several factors: (1) the filing of a joint tax return does not alter the property rights between the spouses; (2) where the payment of taxes came from only one spouse it cannot later be claimed as property of the non-debtor spouse in the event of a refund; (3) filing jointly to gain some tax advantages does not change the fact that only one spouse produced the taxable income; (4) dividing a return in relation to the couple's income is flawed because they may have the same income, but not have the same amounts withheld from their paychecks, and (5) the Internal Revenue Service, in a case in which there is a dispute between spouses, divided the tax refund based on the percentage each spouse paid in tax withholdings.

2. Variants might include the case of one spouse owning a business showing a loss, and the other spouse earning W–2 wages.

3. Fights between the I.R.S. and one of the joint taxpayers and fights between the two joint taxpayers, for example, might have a different result.

## BACKGROUND

When a wife causes her paycheck to be deposited in her and her husband's joint checking account, she is "gifting" her husband half of her pay. He does the same as to his paycheck. If he takes a day or week or month off from work, or a year off, or if he never worked, the result does not change. His wife's gift to him might be a fraudulent transfer, but it is nonetheless a desire to "create ownership" in him. In its holding to the contrary in *Kleinfeldt*, the 10th Circuit BAP seems, to this writer, to be out of touch with this practical reality. (See footnote 5 below.)

The issue arises in at least two important contexts (outside the community property states)—

— 1. In a state like New York which has a cash exemption ($2500, so long as no homestead exemption is claimed) that may be claimed in a yet-to-be-received tax refund, may joint debtors double up the exemption under § 522(m) even if only one had income? That is the question at bar.

— 2. If only one spouse is a debtor, but that spouse is the one who had income, may the *non*-debtor spouse claim some portion of the "refund" as *not* being part of the *debtor*-spouse's § 541 estate? That is not at bar, but is often asked, and is usually the subject of compromise between a trustee and the debtor or debtors.

In the *Aldrich* case, the second context above was presented. United States Bankruptcy Judge David Kennedy reasoned from state matrimonial law and from the fact that joint taxpayers have joint and several liability for tax due without regard to respective earnings or lack thereof, and concluded that indeed a tax refund is jointly owned property without regard to the fact that the non-debtor spouse did not have any earnings.

On the other hand, in the *Kleinfeldt* case, the 10th Circuit BAP, reasoning from what this writer believes a false presumption—that a dictionary definition applies and that a tax "refund" is in fact a "refund,"—concluded that it belongs only to the spouse whose dollars were being "refunded."

This Court rejects the latter reasoning. An income tax "refund" is no more a "refund" of dollars paid than is a "refund" of a credit balance from a credit card account. It simply is not a "refund."

## ANALYSIS

First consider a different type of joint debt. When one overpays a joint credit card account, the surplus dollars are property of the issuing bank or the servicer. A "refund" is not a "refund" of anyone's dollars. Nor was that surplus held in trust. (In some states, tenants' security deposits paid to a landlord, on the other hand, *are* in trust).

Moreover, if I overpay the tax liability of my *son* or *daughter*, the "refund" is not his dollars or her dollars or my dollars. They are the Treasury's dollars.

The overpayment is a payment on account. If the account is a joint account, the payment is a "credit" to the benefit of both persons liable on the account, but the dollars are the dollars of the payee. This is the crux. In no sense of the word is the issuance of a "credit balance" check a "refund" to the one account holder whose wages paid the overpayment. If one of the two paid more than the other was entitled to, it was a gift.

The act of remittance as payment on the account turned those wages into the "property" of the card issuer or servicer. The act of payment of the "credit balance" by the card issuer or servicer jointly to the account holders turned the issuer's property into the jointly owned property of the two account holders (subject, of course, to

any disputes or agreements they might have inter se).

Overpayment of tax withholding and issuance of the so-called "refund" check is precisely the same. What had been wages of one joint taxpayer became property of the United States to the credit of both joint taxpayers, and the "refund" check turned property of the United States into jointly owned property of the two taxpayers.

The holding Second Circuit decision in the case of *Callaway v. Commissioner of Internal Revenue,* 231 F.3d 106 (2d Cir. 2000) is not to the contrary. The holding of that case is that filing a joint tax return does not give one spouse property rights in the *property* of the other spouse. Specifically, if one spouse has ownership of an asset, such as a business, that has tax attributes for the two taxpayers jointly, the fact of joint filing does not give the other spouse a property interest in the business. That Second Circuit holding says nothing about ownership of a resulting tax "refund."[4]

Apart from its holding, however, the Second Circuit did, however, quote from a Fourth Circuit decision in the case of *McClelland v. Massinga,* 786 F.2d 1205, 1210 (4th Cir.1986), wherein it was stated that "mere filing of a joint tax return by a husband and wife does not render the property taxed *or the tax paid* joint property." [Emphasis mine.] To the extent, if any, that this might be viewed as a Second Circuit endorsement of that *McClelland* statement, it must be addressed. The *McClelland* decision upheld the constitutionality of a state statute empowering the intercept of tax refunds that would otherwise go to deadbeat dads, some of whom were married to "non-obligated spouses"

and had filed joint tax returns with those spouses. The Fourth Circuit cited Maryland law for the proposition that the issuance by an insurance company of a check jointly payable to a husband and wife did not "evidence an intention by the husband and wife to create an estate by the entireties." The Fourth Circuit stated that

"[i]t is manifest that, in making the payment pursuant to a joint tax return, the husbands in this case were not intending to create an interest in any possible overpayment in favor of their wives as tenants by the entireties; ... the husbands were seeking the advantage that would accrue to them as taxpayers by filing a joint tax return. At the time they filed their returns, the husbands presumably had no idea whether they were entitled to refunds or whether the State would voluntarily grant them refunds. They had no more basis to assume that they retained any interest in the payment they made to the State than when they paid any other obligation. To read in such a payment, though made pursuant to a joint tax return, an intention to create a tenancy by the entireties would be pure fantasy. Nor was the State creating an estate by the entireties by issuing the refund check in the name of the husband and wife; that method was used simply to assure that each party received such of the refund as he or she by his or her contribution, was entitled to receive on the basis of his share in the overpayment."

*Id.* at 1209.

The Fourth Circuit also examined non-state decisions including one in which it was found to be "well settled" that "spouses filing a joint return have separate inter-

---

4. Specifically, the Second Circuit stated "[t]he filing of joint tax returns does not alter property rights between husband and wife.... In particular, the filing of a joint return does not have the effect of converting the income of one spouse into the income of another."

ests in any overpayment, the interest of each depending on his or her income, i.e., an overpayment is apportionable to a spouse to the extent that he or she contributed to the overpaid tax." (quoting *Gens v. United States*, 222 Ct.Cl. 407, 615 F.2d 1335 (1980)).

In the view of this writer, the *McClelland* decision inappropriately extends the holding of the cases upon which it was based. The federal cases discussed by the Fourth Circuit addressed the ability of the Internal Revenue Service to apply joint income tax overpayments to individual income tax under payments for other years. This writer has no quarrel with the proposition that filing jointly with a spouse who has other income tax "problems" may subject oneself to duly-enacted or duly-promulgated tax statutes or regulations that achieve an unintended result, from the unobligated spouse's perspective. See Rev. Rul. 80–7, 1980–1 C.B. 296, 1980 WL 129579.

The Fourth Circuit's extrapolation from that proposition to the holding it reached with regard to the deadbeat dad statute was premised on a supposition that deadbeat dads who overpaid joint income tax liability "were not intending to create an interest in any possible overpayment in favor of their wives" and "presumably had no idea whether they were entitled to refunds or whether the state would voluntarily grant them refunds" and "an intention to create a tenancy by the entireties would be pure fantasy." That supposition too is fanciful.[5] Rather, this writer would have no quarrel with the result reached in *McClelland* were it premised on the simple notion that one who files a joint tax return with a deadbeat dad cannot expect to walk off with a portion of amounts that he overpaid.

Assuming, therefore, that the Second Circuit's citation of *McClelland* implies approval, this writer emphasizes that the quote from *McClelland* contained the word "mere"—"the *mere* filing of a joint tax return by a husband and wife does not render the property taxed or the tax paid joint property." And in New York, as Bankruptcy Judge Kennedy found in Tennessee, there is ample authority for the proposition that an unemployed spouse's claim to the employed spouse's income does not arise from the "mere" filing of a joint tax return. Rather, § 236 of the New York Domestic Relations Law specifies, for purposes of matrimonial actions, that

> [t]he term "marital property" shall mean all property acquired by either or both spouses during the marriage and before

---

**5.** Consider, for example, these statements from a New York court of intermediate appeal in a matrimonial case:

> The financial arrangements between husband and wife are intensely personal; what suits one household would throw another into disarray. Sometimes the spouses join in discharging the financial responsibilities of the family; sometimes one spouse defers to the other in managing their affairs. Sometimes they agree to keep their individual earnings and property separately; sometimes they agree to merge them. Sometimes their agreement is formal; in most instances it is not. All of these circumstances must be weighed by the court when the marriage is no longer sustainable and the distribution of the family assets is the issue. The filing of a joint income tax return must therefore be viewed in the circumstances of the general financial background of the marriage; moreover, it should be construed as a response to the tax statutes designed to confer a benefit to the married couple. In itself the exercise of the option by the spouses to file a joint return should not be interpreted as the conclusive memorial of the intent to create a joint tenancy or to make a gift by one for the other. We should look beyond the simple execution of the return to the circumstances of the marriage.

*Angelo v. Angelo*, 74 A.D.2d 327, 428 N.Y.S.2d 14, 17 (2d Dept.1980).

the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held ... [but] shall not include

...

....

(1) property acquired before marriage or property acquired by bequest, devise, or descent, or gift from a party other than the spouse;

(2) compensation for personal injuries;

(3) property acquired in exchange for or the increase in value of [the foregoing], except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse .... [6]

Furthermore, in the case at bar it has been proffered that the monthly bills of the Debtors' household are paid out of joint accounts; their accounts have always been held jointly and the responsibility for paying the household bills is considered by the Debtors to be joint responsibility (and the currently-unemployed spouse has, from time to time been employed part-time in past years); they have never held individual accounts at any point during their marriage and both husband and wife have equal access to the funds in the checking account; their joint tax refunds have always been deposited into their joint checking accounts with both debtors having full access to the funds; the tax refunds have traditionally been used to pay educational expenses for their children.

In sum, then, the presently unemployed spouse's claim to an ownership share of the tax refund is not based on the "mere" filing of a joint tax return, but is codified in the matrimonial laws of the State of New York and is recognized by both spouses in their actual financial practices of long standing.

Finally, it would seem to this writer to fly in the face of the state exemption to say that a stay-at-home spouse who lets the other spouse overwithhold, rather than demanding that the excess go into the joint account where it is immediately available to the stay-at-home spouse, loses any rights to that income if one or both spouses end up in bankruptcy before the United States Treasury pays the "credit balance" to the "joint taxpayer entity." The statute was specifically drafted for bankruptcy cases (the exemption does not exist outside bankruptcy) to treat an unpaid tax "refund" like "cash in the bank."

When the present issue is presented to the Court strictly as an exemption question, as it is presented here where both spouses are debtors, the above analysis completely suffices. It would not completely suffice if the unemployed spouse is not a debtor, because state exemption law does not provide a cash exemption outside a bankruptcy case. However, the fact that the Domestic Relations Law treats each spouse's earnings as "marital property" even in a dispute between the spouses, completes the § 541 analysis. The non-debtor spouse does have a property interest to the exclusion of the debtor spouse. And the general rule that governs all cases here for every other purpose applies— husband and wives own their jointly-owned assets (homes, bank accounts, investments, lottery winnings, etc.) in equal shares.

These Debtors may claim an aggregate of $5,000 of the tax "refund" exempt.

SO ORDERED.

---

**6.** See also cases such as *Rheinstein v. Rheinstein,* 245 A.D.2d 1024, 667 N.Y.S.2d 156 (4th Dept.1997) ("The ... $8180.71 used to fund the Merrill Lynch account came from tax refunds and awards received by [the husband] during the course of his employment and is properly considered marital property.")