**In re Clyde B. BARROW, Debtor.**

**No. 01–11582 B.**

United States Bankruptcy Court,
W.D. New York.

Feb. 20, 2004.

Penney, Maier & Wallach, Mark S. Wallach, of Counsel, Buffalo, NY, for Trustee.

Sullivan, Oliverio & Gioia LLP, B.P. Oliverio, of Counsel, Buffalo, NY, for Debtor.

Kevin M. Murphy, Buffalo, NY, for Internal Revenue Service.

CARL L. BUCKI, Bankruptcy Judge.

In the present dispute, a non-debtor spouse and the chapter 7 trustee of her husband's estate have asserted competing claims to an income tax refund. Highlighting the challenge of allocating this type of asset, the circumstances of this case invite a consideration of the special rights of an innocent spouse.

Clyde Barrow filed an individual petition for relief under chapter 7 of the Bankruptcy Code on March 22, 2001. Among his outstanding debts was an obligation to the Internal Revenue Service in the amount of $3,821, for income taxes due for the 1995, 1996, and 1997 tax years. For each of these years, the basis of liability was a non-joint tax return. Shortly after Mr. Barrow petitioned for bankruptcy relief, he and his wife filed a joint federal income tax return for calendar year 2000. This return shows an entitlement to a refund of $9,128. The present dispute involves the allocation of this refund among the Internal Revenue Service, the debtor's bankruptcy estate, and June Barrow, Clyde's non-debtor spouse.

Bound by the automatic stay of 11 U.S.C. § 362, the Internal Revenue Service holds the 2000 tax refund of Clyde and June Barrow until further direction from this court. If Clyde Barrow had not filed for bankruptcy protection, however, the IRS as a general rule would have offset the refund against Clyde's outstanding tax liabilities for 1995, 1996 and 1997. The Service recognizes an exception to this practice, however, when the refund represents an interest of an innocent spouse. June Barrow asserts that because the outstanding liabilities arose only in years for which her husband had filed separate tax returns, she holds the status of an innocent spouse with respect to those obligations. Her separate earnings accounted for most of the couple's income in 2000 and provided the bulk of moneys withheld for payment of taxes. For these reasons, June Barrow has now moved to authorize the IRS to process her application for treatment as an innocent spouse and to release

to her the resulting allocation of the tax refund. Based on calculations in IRS form 8379, Mrs. Barrow believes that from the total refund, the sum of $8,836 should be paid to herself, and that only $292 is available for offset of her husband's pre-petition taxes.

The debtor's chapter 7 trustee vigorously objects to the motion of June Barrow for release of her claimed allocation from the 2000 tax refund. Relying upon the recent decision of my colleague in *In re Hejmowski*, 296 B.R. 645 (Bankr.W.D.N.Y. 2003), the trustee asserts that the movant has gifted an interest in the refund to the debtor, so that the entire refund is now subject to offset by the Internal Revenue Service for payment of the debtor's taxes. Such an offset will decrease the total of claims against the bankruptcy estate, and will thereby allow a greater distribution to other unsecured creditors. The trustee proposes, therefore, that the IRS satisfy its tax claim from the joint refund, and that any remaining refund be divided between the trustee and the debtor.

For the reasons stated hereafter, this court rejects the positions both of the trustee and of June Barrow.

■ A trustee may exercise control over an income tax refund, but only to the extent that it constitutes an asset of the estate under 11 U.S.C. § 541. Accordingly, a resolution of the present dispute requires a determination of the ownership of the joint tax refund. As to this issue, bankruptcy courts have adopted widely divergent positions. The majority view allocates a joint tax refund between spouses in proportion to their tax withholdings. *See, e.g., In re. Kleinfeldt*, 287 B.R. 291 (10th Cir. BAP 2002). A second approach divides the refund in proportion to the income that each spouse generated. *See, e.g., In re Levine*, 50 B.R. 587 (Bankr. S.D.Fla.1985). Still other courts have ruled that each spouse owns the refund equally, so that the refund will be allocated evenly between them. *See, e.g., In re Aldrich*, 250 B.R. 907 (Bankr.W.D.Tenn.2000). In the Western District of New York, the most recent pronouncement on this issue was the decision of my colleague, the Honorable Michael J. Kaplan, in *In re Hejmowski*, 296 B.R. 645 (Bankr.W.D.N.Y. 2003). Agreeing with the last of the above approaches, Judge Kaplan concluded "that for § 541 and § 522 purposes only, the 'refund' is owned jointly, and in equal shares." 296 B.R. at 646. In my view, this result is generally correct, but any presumption of joint ownership is rebuttable.

■ The Internal Revenue Code's treatment of a tax overpayment does not necessarily determine its characterization for other purposes in the context of bankruptcy. As stated by the Court of Appeals in *Callaway v. C.I.R.*, 231 F.3d 106, 117 (2nd Cir.2000), "[t]he filing of joint tax returns does not alter property rights between husband and wife. In particular, the filing of a joint return does not have the effect of converting the income of one spouse into the income of another." Accordingly, to determine the ownership of a refund that results from a joint tax return, we must look not to the tax code, but to otherwise applicable law. Unfortunately, no statute or controlling appellate precedent speaks directly to this question. Hence, we witness the widely divergent holdings of bankruptcy courts.

I disagree with those courts that allocate refunds in proportion either to income or amount of withholdings. The reality of the Internal Revenue Code is that the total tax is not necessarily linked to income, while the overpayment is not necessarily linked exclusively to income or withholdings. For many taxpayers, a significant portion of the refund is attributable not to these

factors, but to any of a number of credits, such as the child tax credit or credits for education or for child and dependent care expenses. In many ways, the tax consequences of a joint filing exhibit no proportionality to respective levels of withholding and income. Joint tax filers may claim an exemption for each spouse, thereby effectively allowing them to use that exemption to offset income of the spouse with higher earnings. Similarly, the losses or deductions of one spouse may favorably impact their joint taxable income. For many married couples, a joint filing permits use of a more favorable tax table. The results are most dramatically illustrated when one spouse earns the entire family income. In that instance, because a spouse without income has joined in signing the tax return, the family may pay significantly less tax, as compared to the tax that would have accrued to a married person filing separately but with identical income and withholdings. It is simply inaccurate to say that the greater refund is attributable only to the income and withholdings of the employed spouse.

■ I agree with the conclusion of Judge Kaplan in *In re Hejmowski*, that as a general rule, the refund on a joint tax return is a joint asset that spouses own "in equal shares." 296 B.R. at 650. Under the current tax code, we simply cannot assume that any refund represents income for one spouse or the other. In most instances, for all of the reasons stated in *Hejmowski*, the most reasonable allocation is an equal division of any refund that derives from a joint tax return. Furthermore, joint ownership appropriately parallels the potential of joint liability for any unpaid tax deficiency. *Bass v. Hall*, 79 B.R. 653 (W.D.Va.1987). This court will, therefore, presume equal ownership of any joint tax refund. This outcome, however, is always rebuttable. In contested situations, the issue is whether by their present conduct or history of financial management, the taxpayers have demonstrated a basis for separate ownership.

In *Hejmowski*, the debtors' conduct fully indicated the intent of a gift by each spouse to the other, and thereby supported the finding of a joint ownership of tax returns:

> [T]he monthly bills of the Debtors' household are paid out of joint accounts; their accounts have always been held jointly and the responsibility for paying the household bills is considered by the Debtors to be joint responsibility (and the currently-unemployed spouse has, from time to time been employed part-time in past years); they have never held individual accounts at any point during their marriage and both husband and wife have equal access to the funds in the checking account; their joint tax refunds have always been deposited into their joint checking accounts with both debtors having full access to the funds; the tax refunds have traditionally been used to pay education expenses for their children.

296 B.R. at 650. There, all of the relevant facts pointed to joint ownership. Although the court recognized a general rule of joint ownership, the decision in *Hejmowski* implied that in special circumstances, a joint tax return might produce a different result.

■ Admittedly, the present circumstances are not identical to those in *Hejmowski*. Clyde and June Barrow have no consistent history of joint tax filings. From 1995 through 1997, Clyde submitted his own separate returns. Mrs. Barrow also asserts that IRS regulations will allow an allocation and distribution of her separate share of the refund. On the other hand, she offers no further proof of independent financial management. Have Mr.

and Mrs. Barrow maintained separate checking accounts? Have they commingled their cash assets? Mrs. Barrow provides no evidence of how she and her husband may have handled any previous joint refunds. Were they deposited into a joint account, or did Mr. and Mrs. Barrow separate the refund on some rational basis for their separate use? While the facts may be less persuasive than in *Hejmowski*, I nonetheless find insufficient basis to overcome the presumption of joint ownership. Moreover, a close examination of the couple's tax return suggests that the amount of refund may be substantially attributable not merely to the wife's income and deductions, but to the consequences of her husband's joinder. Mrs. Barrow has submitted to the court a copy of the couple's form 1040 for 2000, but without the accompanying schedules. The Barrows reported an adjusted gross income of $85,867, of which $83,089 was earned by Mrs. Barrow. However, their taxable income totaled only $46,123. The amount of tax refund largely reflects the difference between adjusted gross income and taxable income. Part of this difference derives from personal exemptions for Clyde, June, and a dependent child. The bulk of the difference, however, relates to itemized deductions of $31,344, a sum significantly greater than the standard deduction. To the extent that portions of these deductions are attributable to Clyde or his business activity, the inclusion of Clyde into a joint return may have enhanced the refund in ways that are disproportionate to Clyde's share of the family's adjusted gross income and total withholdings. Without the exemption and deductions attributable to her husband, would June Barrow have received any refund as a married taxpayer filing separately? As incorporated into form 8379, the allocation standard of the IRS simply does not speak to all of these considerations. By relying solely on that form, Mrs. Barrow fails to show how either income or amount of withholdings provide an accurate basis for allocation of refund in this bankruptcy proceeding.

The presumption of equal ownership applies a reasonable and fair method for allocating a joint tax refund. This standard also avoids difficult issues of proof, particularly in the typical case where income or withholding ratios present an incomplete and inaccurate basis for attribution. Similarly, in the present instance, Mrs. Barrow has presented no alternative basis for a more precise allocation of the refund. While the presumption of equal ownership is always rebuttable, this court has heard no convincing evidence of conduct or history of practice that would imply an intent other than for equal ownership of the joint tax refund.

 The present motion essentially seeks two forms of relief: first, an authorization to request an allocation by the IRS; and second, an authorization for June Barrow to retain that portion of the refund that the IRS will allocate to her. The right of Mrs. Barrow to a refund under the Internal Revenue Code is separate and distinct from the interests of her husband's bankruptcy trustee. Just as the tax code does not determine ownership of a joint refund for purposes of bankruptcy, so too, bankruptcy law does not define the rights of a non-debtor under the tax code as against the IRS. With respect to June Barrow's first request, this court can identify no basis to preclude a determination by the IRS of rights as between Mrs. Barrow and the IRS. Accordingly, this court will grant the request for authorization to submit form 8379, for the purpose of initiating an IRS determination of that interest against which it will assert rights of offset on account of Clyde's tax liabilities. If the IRS accepts the calculations

that June Barrow will submit on form 8379, the Service will allocate $292 of the refund to her husband for offset against his obligations. Presumably, the IRS will then release the remaining $8,836 of the refund to Mrs. Barrow. That, however, does not resolve rights as between Mrs. Barrow and the chapter 7 trustee. Notwithstanding any release of funds by the IRS, June Barrow may retain only half of the total refund, or $4,564. She should then remit to the trustee the remainder of any sums that the IRS will have released into her possession.

So Ordered.